LYMAN H. TOWER, PLAINTIFF IN ERROR, V. DAVID FETZ, DEFENDANT IN ERROR.

[FILED JUNE 13, 1889.]

1. **Conveyance:** DEED SHOWN TO BE MORTGAGE. F., the owner of a farm in Webster county, negotiated a loan of money thereon from one Fay, of New York, through T., a loan and investment agent at Hastings. The mortgage upon the farm was executed to Fay, but delivered to T., who attended to the collection of the interest, and, from the character of his dealings with Fay, was the moral guarantor of the interest and principal. F. made default in the payment of interest. T. being absent, wrote to one D., his local and general agent, that he would assume the mortgage in consideration of a warranty deed of the farm. Thereupon D. applied to F., and informed him that he was sent by T. to demand the interest, and that unless some arrangement was made, the mortgage would be foreclosed; that if F. would make them

a deed of the farm, they would take the land and sell it, and whatever was over after paying the mortgage, taxes, and expenses, they would return to him; and that F. might have the same privilege, in which case he could turn over the proceeds sufficient to pay the mortgage. Thereupon F. executed a warranty deed of the farm to T., and delivered it to D. This deed, as between F., and T., *held*, to be a mortgage.

2. ————: ————. A deed, absolute *in its terms*, may be shown by paroll to have been given for the purpose of securing the payment of money; in which case, as between the parties, such deed will be construed to be a mortgage only.

ERROR to the district court for Douglas county. Tried below before HOPEWELL, J.

*Savage, Morris & Davis,* for plaintiff in error, cited: *Hansen v. Berthelsen,* 19 Neb. 434; *Maigley v. Hauer,* 7 Johns. 341; *Craighead et al. v. Peterson,* 72 N.Y. 279; *Wood v. Goodrich et al.,* 6 Cush. 117; *Stainer v. Tysen,* 3 Hill, 279; *Owings v. Hull,* 9 Pet. 628; *Cruzan v. Smith,* 41 Ind. 228; *Tidrick et al. v. Rice,* 13 Iowa, 214.

*Montgomery & Jeffrey,* for defendant in error, cited; *Miles v. Ogden,* 12 N.W. Rep. 81, 82; *Wellauer v. Fellows,* 48 Wis. 105; *Ellwell v. Chamberlain,* 31 N.Y. 619; *Schade v. Bessinger,* 3 Neb. 145; 1 Jones on Mortgages, sec. 324; *M'Crea v. Purmort,* 16 Wend. 460; 2 Devlin on Deeds, sec. 1118, and cases cited; *Villa v. Rodriguez,* 12 Wallace, 339.

COBB, J.

This action was commenced in the district court of Douglas county by David Fetz, plaintiff, against Lyman H. Tower, defendant.

The petition alleges that in March, 1880, the plaintiff was a resident of Webster county, and was owner in fee of one quarter section of land therein described, and that the defendant was a resident of the city of Hastings, engaged

in negotiating loans on farm property; that at said time plaintiff employed defendant to negotiate a loan on said land for the sum of $800, with one Edwin R. Fay, for which plaintiff executed a mortgage on said land securing a note payable to said Fay, —— years after date, with interest at ten per cent, semi-annually; that plaintiff was unable to meet the interest coming due on said note, and on the 28th of June, 1882, he was visited by one Dent, who was agent of said defendant, and who, by authority of defendant, approached plaintiff and informed him that if he did not pay the interest on said mortgage to Fay, the mortgage would be foreclosed and the property sold for a sum less than the amount of his indebtedness, and that a deficiency judgment would be rendered against him; but that if he would convey the land to the defendant Tower, he, Tower, would negotiate and sell the same at private sale for a much better price than it would bring at a judicial sale, and out of the proceeds would pay the said mortgage to Fay, and the taxes on the property, and account to the plaintiff for the balance of the price he should receive for the land. Accordingly, having confidence in the representations and promises of Dent, plaintiff made and delivered to Tower his warranty deed for the land, conveying the same to him, which deed was accepted by Tower on the day last mentioned, for which the plaintiff received no other consideration than the promises hereinbefore stated; that on January 2, 1883, Tower paid the taxes for the year 1881 on the land, amounting to $18.70, and on July 10, 1883, paid the taxes for 1882, amounting to $12.48; that defendant never paid any other sum on said land, but on June 27, 1883, sold the same for $1,200 over and above the mortgage, subject to the payment thereof, to one Wallace L. Lighthart, and executed a deed therefor and received the said sum of $1,200; that the defendant, though often requested by the plaintiff to account for and pay to him the consideration received from said Lighthart for said land,

less the amount of taxes paid thereon, has neglected and refused and still neglects and refuses so to do; with prayer for judgment for $1,168.82, with interest from June 27, 1883, at seven per cent per annum.

The defendant answers, denying each and every allegation except such as are specifically admitted or denied; and admits that the plaintiff was the owner of the land; that he negotiated a loan for the plaintiff with Fay as alleged; that not knowing whether or not one Dent made the representations set forth, denies the same, and denies that Dent was the agent authorized and empowered to make any such representations, and says that he purchased the land from plaintiff, paying therefor a valuable consideration, and, in addition thereto, assumed the mortgage and note mentioned; that the land at the time of the purchase was not worth more than the amount loaned thereon, $800, and in assuming the same defendant was paying the full value, and that the sale was made to him without any conditions whatever, and was a *bona fide* sale, and so understood by all parties concerned. He admits that he afterwards paid the taxes, and that on June 27, 1883, he sold the land to Wallace L. Lighthart and conveyed the same for $1,200; and that he refuses to account to plaintiff for said sum, less the taxes, or for any other sum, and denies that he is indebted to the plaintiff in $1,168.82, or any other sum whatever.

The plaintiff replied, denying that the defendant purchased said land, paying a valuable consideration, and denying that he paid any consideration whatever; denying that the land, at the time of the purchase, was not worth more than the amount loaned thereon, $800; alleging that the land was worth at that time $2,500; and denying that in assuming said note and mortgage defendant was paying its full value; and denying that the sale was made without conditions and was a *bona fide* sale, and so understood by all parties.

There was a trial to the court, a jury being waived, with a finding for the plaintiff and judgment for $1,567.50.

The defendant brings the cause to this court on error, and assigns twenty distinct errors in the proceedings below, seventeen of which are for the alleged erroneous admissions of testimony offered by the plaintiff and objected to by defendant; the eighteenth, that the decision is not sustained by sufficient evidence; the nineteenth, that the decision is contrary to law; the twentieth, that the court erred in overruling the motion for a new trial.

The last three only, will be considered, as it has been often held that where a cause is tried to a court without the intervention of a jury, its judgment will not be reversed by an appellate court for error in the admission of testimony on the trial. (*Richardson v. Doty*, 25 Neb. 420; *Enyeart v. Davis*, 17 Neb. 228; 1 Greenleaf on Evidence, 14th Ed., sec. 49.) So that if upon the examination of the last three points it shall appear that sufficient material and competent evidence was before the court to sustain its findings and judgment, they will not be reversed for the reason that there was also before it illegal and incompetent testimony.

It appears from the bill of exceptions that in 1880 the plaintiff was the owner of a farm in Webster county, and the defendant was carrying on a loan agency and a business at Hastings. The plaintiff applied to the defendant for a loan of money on his said farm. Defendant entertained the application and sent one Dent, his brother-in-law and general agent on the outside business of his loan branch and agency, to inspect and value the farm. This, being done, resulted in the negotiation of a loan of $800 by the plaintiff through the agency of the defendant from one Edwin R. Fay, of New York, an old customer of the defendant, a mortgage being executed upon the farm to secure the loan to Fay for said $800, drawing ten per cent interest, payable semi-annually, for five years from March, 1880, the

period the mortgage was to run; and that the plaintiff, through his son, paid one year's interest on the loan. At the expiration of the second year, that year's interest was unpaid, and defendant notified plaintiff by letter, as he testifies, to the effect that unless the interest was paid, the mortgage would be foreclosed; that some time afterwards, defendant being absent in the east, wrote to Mr. Dent, his general agent, that he would assume the mortgage of plaintiff to Fay "in consideration of the warranty deed to me." About this time, and presumably after the receipt of the letter from Dent by the defendant, as appears by the testimony of the plaintiff, Dent applied to the plaintiff, representing that he was sent by the defendant to demand the interest due on the mortgage. The plaintiff being unable to pay the interest, Dent informed him that "they would have to foreclose the mortgage if he did not make some arrangement;" that plaintiff replied to him that "he did not know what arrangement he could make, as he had no means at hand, at all, except the farm;" that Dent then said that "they had a good deal of land on their hands, and were not very particular about taking any more; but if plaintiff would agree to make them over a deed, they would take the land and sell it, and whatever was over after paying the mortgage and the actual expenses, they would pay to him, and that plaintiff might also have the same privilege, provided he would make the deed," to sell the land, and to notify them that he had sold it, and turn the money over to them; that all that was done; and that was the understanding; that Dent said if the plaintiff did not do that, the mortgage would be foreclosed, and plaintiff would be burdened with another debt "on his relations, and that he had better do it;" that Dent agreed at the time to give plaintiff papers to show this arrangement; that the deed was then written out by Dent; was left at the county clerk's office, and was afterwards executed by plaintiff and his wife and was placed on record. This deed was a general war-

ranty deed of the mortgaged farm of plaintiff to defendant, expressing the consideration of $925, executed on June 28, 1882. There does not appear to have been any defeasance executed to the plaintiff by the defendant, nor any one for him, in accordance with the understanding between Dent and the plaintiff, as testified to by the latter.

The above facts, excepting those pertaining to the loan, the execution of the mortgage, the paying of one year's interest by the plaintiff's son, the delinquency of the second year's interest, the notifying of the plaintiff by the defendant that unless the same was paid the mortgage would be foreclosed, the writing by defendant to Dent from the east that he would assume the mortgage in consideration of a warranty deed of the farm, and the conveyance of the farm by plaintiff and wife to defendant, are denied in general by the defendant; but there is no evidence in respect thereto in conflict with that of the plaintiff. Just one year and a day after the execution of the deed by the plaintiff and wife to the defendant, the defendant and wife made their deed of the farm to William L. Lighthart for the expressed consideration of $1,200, subject to the said mortgage and taxes.

It will be observed that the original mortgage was directly to Mr. Fay. The defendant testifies that although he did not guaranty mortgages taken by him directly to Fay, and while he did not think that he would be obliged to make good any deficiency in such loans, yet, in point of fact, he had always made good the loans, and had always felt that, without reference to any special guaranty, he should take care to make good any such loans; therefore, the defendant stood in the same attitude toward the plaintiff, in this transaction, as if the original mortgage had been made to him and he was the owner of it; and this being the case, according to the testimony of the plaintiff, which was accepted by the court, the absolute deed of the plaintiff was substituted for the mortgage, not for the purpose of con-

veying the equity of redemption, but of placing it in the power of the defendant to sell and convey the land and thereby raise the money to discharge the mortgage and taxes. According to the defendant's testimony, Dent was authorized to receive a conveyance of the land from the plaintiff; but notwithstanding that, he further testifies that Dent was not authorized to make the contract and offer the promises which the plaintiff testifies he made and offered to him.

I think that the deed, under the circumstances in evidence, must be held to be of that character, and to have been given for the purpose, expressed by whatever contract was made, and such understanding as was had, between the plaintiff and Dent at the time of its execution by the one and its acceptance by the other.

It is worthy of mention that neither the note, nor the mortgage executed by the plaintiff to Fay, was either canceled or delivered up to the plaintiff at the execution of the deed; nor does it appear to have been done to this day.

I do not conceive the question of estoppel to be a controlling consideration in this case, but rather that by means of this conveyance, the defendant, having the control of the mortgage, and acting through Dent, who was clearly his agent to receive the deed, and by the subsequent disposal of the land, received a large sum of money in excess of that sufficient to pay all claims which as agent for and moral guarantor to Fay, or Fay himself, he was entitled to receive, in his discharge of the mortgage. This money, it would appear to be inequitable and against good conscience to decree that the defendant should retain.

But the most important legal question presented, is whether the trust created by and resulting from the deed, absolute on its face, could be proved by parol testimony. There is sufficient authority on this question. The case of *Babcock v. Wyman*, 19 How. (U. S.) 289, was in all material features similar to the case at bar. One Nehemiah

Wyman, was seized in fee of real property in Charleston,. Massachusetts, and mortgaged it to the plaintiff to secure certain debts, due him in his own right, and certain others. due to the estate of Francis Wyman, deceased, of which the plaintiff was executor. Nehemiah not being able to. pay the accruing interest to the plaintiff, and being urged by his brother William to make a deed in fee of the land. to the plaintiff that he might manage and improve it, and apply the rents and profits to the interest and gradually liquidate the principal, and being promised by the plaintiff' further advances, conveyed the property to the plaintiff. it being expressly agreed that notwithstanding the form of the conveyance, it should stand as security only for the sums. due from him, amounting to $2,033.87.   The plaintiff took possession of the property, and afterwards represented him- self as the sole owner, and sold it at private sale, without. notice to Nehemiah, for $8,000.   Nehemiah subsequently conveyed his right to redeem to Edward Wyman, a citizen of the state of Missouri, who exhibited a bill against the plaintiff in error in the circuit court of the United States for the district of Massachusetts.   Decree was rendered, on evidence and argument, for the complainant, and the cause was brought to the supreme court of the United States for review.   The principal question raised by the appellant was whether, under the circumstances of the case, it was. competent to show by parol evidence that a deed, absolute in terms, was intended to operate only as a mortgage.   The opinion was by Justice McLain, who, upon principle and the authority of that court, and other notable instances, held that it was competent to prove the trust thus established by parol testimony.   The decree of the circuit court was affirmed.

Supplemental to this is the case of *Morgan's Assignees. v. Shinn*, 15 Wallace, 105, in which the same question arose. The assignees of the plaintiff, in this case, to enforce a con- tribution for an advance made for the repairs and expenses.

of the "Fairfax," a steamer, exhibited a bill averring that the defendant was the owner of one-fourth part of the vessel, and the defendant answered that he had a mere interest as a mortgagee. It appeared in the facts of the case that in October, 1865, one Kelly was the owner of one-fourth part of the vessel, and made a bill of sale of his interest to the defendant, and at his instance the bill of sale was forthwith recorded. On the 23d of October the vessel was reënrolled, by Morgan swearing that the defendant was the owner of one-fourth. Subsequently the vessel was destroyed by fire. In the trial court, there was the parol evidence of the defendant and that of the writer of the bill of sale, and others, that the bill of sale, though absolute in its terms, was intended only to secure the payment of money advanced by the defendant to Kelly to enable him to pay for his one-fourth part of the vessel. The case presented was that if the defendant was the real owner, under the terms of the bill of sale, he was liable to the plaintiffs for the one-fourth part of the advances for repairs and expenses of the vessel; but if the bill of sale was only a security, then he was not liable. The trial court dismissed the bill, and the plaintiffs brought it for review to the supreme court. The opinion of the supreme court, by Justice Strong, held that it is not questionable that an instrument, absolute in its terms, may be shown, by parol evidence, to be only a mortgage; the author of this opinion citing the case already referred to of *Babcock v. Wyman, supra; Foyer v. Lavington,* 1 Peere Williams, 268; *Russel v. Southard,* 12 Howard, 139. The judgment of the lower court was unanimously affirmed.

On these considerations and precedents, the judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.