E. H. MONROE V. REID, MURDOCK & COMPANY ET AL.

FILED NOVEMBER 8, 1895.   No. 6215.

1. **Appeal and Error:** ELECTION AS TO REMEDY: WAIVER OF APPEAL. A case will not be considered in this court as both an appeal and a proceeding in error. A party must elect which remedy he will pursue, and having filed a petition in error, must be presumed to have selected that remedy.

2. **Pleading:** AMENDMENTS. The amended petition in this case does not state a new and different cause of action from that set forth in the original petition, and objections to it on that ground were properly overruled by the trial court.

3. **Fraudulent Conveyances:** ACTION FOR CANCELLATION: EQUITY. This action, as disclosed by the pleadings, was to set aside an alleged fraudulent transfer of property and reach and appropriate to the payment of judgments against the debtor his moneys or property claimed to have been concealed, and was equitable in its nature and triable by the court without the intervention of a jury.

4. ——: ——: PROCEEDINGS IN AID OF EXECUTION. The right to such an equitable action existed prior to the enactment of the statute providing for proceedings in aid of execution, and still exists. The statutory remedy did not supersede or destroy it.

5. ——: ——: FINDING FOR PLAINTIFF. The evidence examined, and *held* sufficient to support the findings of the trial court.

6. Trial to Court: ADMISSION OF INCOMPETENT EVIDENCE: HARMLESS ERROR. In trials of fact to the court without the intervention of a jury, if sufficient competent evidence is admitted to sustain the findings of the court, the case will not be reversed on the ground of the admission of immaterial and incompetent evidence.

7. Actions: PLEA IN ABATEMENT. The plea in abatement of another action pending in the same court between the same parties, regarding the same subject-matter and in which the relief sought is practically the same, is a good defense to a second action, and the fact that one is an action at law and the other in equity is immaterial.

8. ——: ——: PLEADING AND PROOF. To constitute a good defense, however, it is necessary for the party seeking the abatement of the present action, by reason of the pendency of that already commenced, to plead and prove the connection of the former action to the same subject-matter, the relations of the parties therein to be the same as that in the case in which the plea is interposed, and that the relief sought is practically identical with that sought in the second action.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J.

*D. B. Carey* and *E. F. Gray,* for plaintiff in error.

*H. J. Whitmore, Montgomery, Charlton & Hall,* and *Fred W. Vaughan, contra.*

HARRISON, J.

On the 1st day of April, A. D. 1892, the defendants in error filed a petition in the district court of Dodge county, in which was stated the business in which each was en-

gaged during the occurrences and circumstances set forth
in the pleading, connected with the elements of the cause
of action; that Reid, Murdock & Co., during the time one
Frank H. Scott was in business as stated, sold to him, on
credit, quantities of goods and merchandise, and on De-
cember 18, 1891, obtained two judgments against him for
the amounts of their bills, one for $612.87 and one for
$331.90, upon which executions were thereafter issued,
which, on December 19, 1891, were returned unsatisfied
for want of property of the judgment debtor on which to
levy; that proceedings in aid of execution were instituted,
and E. H. Monroe was summoned to appear therein and
answer. It was further recited that Raymond Bros. &
Co. had an account against Frank H. Scott in the sum of
$541.27; the Lincoln Packing & Provision Company, a
balance due on account in the sum of $95.08; Z. T. Left-
wich, an account in amount $516, each of which was, by
the party to whom it was due, prosecuted to judgment,
execution issued and returned unsatisfied, "No property
found," and in proceedings in aid of execution E. H. Mon-
roe had been summoned to appear and answer; that on
September 30, A. D. 1891, Frank H. Scott of defendants
was married to the daughter of E. H. Monroe, another of
defendants, and it was further averred:

"That on the 14th day of July, 1891, the said defendant
Frank H. Scott, being then the owner of and in possession
of a stock of goods, wares, merchandise, and fixtures to the
value of upwards of $8,000, and being fully able to pay all
of his indebtedness, and being indebted to these plaintiffs
as aforesaid, and to divers other persons in large amounts,
did, for the purpose of hindering and delaying these plaint-
iffs and others of his creditors in the collection of their de-
mands, and unlawfully, willfully, and fraudulently design-
ing to cheat and defraud these plaintiffs in the collection of
their demands, the said Frank H. Scott on said day sold
and conveyed to his said father-in-law, the said defendant

E. H. Monroe, the whole of said stock of goods, wares, merchandise, and fixtures, and, as plaintiffs are informed and believe, received therefor from the said E. H. Monroe the sum of $3,700 in money in cash in hand, and three promissory notes of the said E. H. Monroe payable to the order of said Frank H. Scott and dated July 14, 1891, as follows : One note for $1,000, due in sixty days from date; one note for $1,300, due in ninety days; and one note for $1,000, due in four months from date, each of said notes bearing interest from date at the rate of eight per cent per annum ; that shortly after the said sale and conveyance aforesaid the said Frank H. Scott, with fraudulent intent and purpose as aforesaid, and for the purpose of placing the said notes and money so received beyond the reach of these plaintiffs and others of his creditors, secretly departed from the city of Fremont and went to the state of Colorado, taking with him the said notes and money; that he was soon followed to said state of Colorado by his father, the said defendant Pliny Page Scott, and that said notes were by the said Frank H. Scott placed in the possession and keeping of said Pliny Page Scott in the city of Denver, and, as plaintiffs are informed and believe, the second and third of said notes are still in the possession of said Pliny Page Scott.

"Plaintiffs further say that they are informed that the said Pliny Page Scott now pretends to be the owner of said two notes and refuses to return the same to the said Frank H. Scott. These plaintiffs aver that the said Pliny Page Scott knew at the time of said sale that the same was being made, and that the said Frank H. Scott was indebted as aforesaid and that the creditors of said Frank H. Scott had not been paid, that said notes were delivered to him without consideration and for the fraudulent purpose aforesaid, and that Pliny Page Scott has no right, title, or interest in or to said notes.

"Plaintiffs further say that, as they are informed, the

defendant C. B. Morrow claims some interest in said notes, or, if he makes no such claim, that he claims possession thereof, but these plaintiffs allege that if the said C. B. Morrow has said notes in his possession they are held by him fraudulently and without consideration on his part, and with knowledge on his part of the fraudulent intent as aforesaid of the defendant Frank H. Scott to cheat and defraud the plaintiffs and his other creditors by placing the notes beyond their reach.

"Plaintiffs further say that the defendant E. H. Monroe now refuses to pay the said notes to the said Frank H. Scott, or to pay the proceeds thereof to these plaintiffs into court to be applied to the payment of plaintiffs' said judgment; that the said Frank H. Scott is wholly insolvent and has no property liable to execution to satisfy said judgments, and these plaintiffs are without adequate relief at law, and that the fund in the hands of the said E. H. Monroe, and due on the said notes, is all the property of said defendant Frank H. Scott out of which plaintiffs' said judgments can be satisfied."

The prayer of the petition was as follows:

"These plaintiffs therefore pray judgment against the said E. H. Monroe for the amount of their said judgments, interest, and costs; that the said Pliny Page Scott and C. B. Morrow be required to bring said notes into court that the same may be canceled, and that the said E. H. Monroe be enjoined from paying the said notes to the said Frank H. Scott, or to Pliny Page Scott, or C. B. Morrow, or to any person whomsoever until the further order of this court, and that the said Frank H. Scott be enjoined from disposing of the said notes and from canceling or destroying the same; that said notes be decreed to be the property of said defendant Frank H. Scott, and the proceeds thereof liable to the payment of plaintiffs' said judgments, with interest and costs thereof; and plaintiffs further pray for such other and further relief as may be just and equitable."

A temporary injunction was allowed and the required bond filed and approved. E. H. Monroe filed an answer in which the allegations of the petition in relation to defendants in error, the business in which they were respectively engaged, the existence of the indebtedness of Frank H. Scott to each and the judgments obtained, the issuance and return of the executions, the institutions of the proceedings in aid of execution were admitted, and it was stated in relation to the supplemental proceedings that in all the cases the answers had been made and the answering party discharged, except in that of Z. T. Leftwich, of which it was alleged there had been no hearing. The marriage of Scott and Monroe's daughter is stated to have occurred December 30, 1891, and not September 30, 1891, as pleaded in the petition. The purchase of the stock of goods by Monroe for the consideration of $7,000, the cash payment and execution and delivery of notes for the balance are admitted, but it is denied that the goods were worth more than the amount for which they were sold, and it is further denied that the sale was made to hinder, delay, or defraud creditors of Scott, or to cheat them, or that there was any fraud, secrecy, or conspiracy connected with the placing and keeping the money paid and notes delivered as a consideration for the sale of the goods to Monroe. The allegations of the petition as to Scott's insolvency are also denied, and it is further pleaded:

"This answering defendant alleged that his purchase price of said stock of goods of Frank H. Scott was $7,000, and on said purchase, about July 14, 1891, he paid said Scott $3,700 in cash, and delivered him his three negotiable promissory notes, one for $1,000, due in sixty days from date, and one for $1,300, due in ninety days from that date, and one for $1,000, due in four months from date, each bearing interest at eight per cent from date; that said sixty-day note this answering defendant paid to said Scott shortly before due and took the same up; that the other two

of said notes this answering defendant, on March 28, 1892, paid to C. B. Morrow, who was then, and from before either of them became due had been, the owner and holder of them for value, and upon said payments said answering defendant took up said two notes, and this answering defendant owes nothing on said purchase, and did not owe anything on said purchase at the commencement of this action. This answering defendant denies each and every allegation in said petition not above admitted."

The reply to this answer was in effect a general denial of all new matter stated in the answer. The defendants in error made application to file an amended petition, which was objected to by plaintiff in error on the following grounds:

"1. Said proposed amended petition sets up a new and different cause of action from that set up in the original petition.

"2. Said proposed amendment sets up matter irrelevant to the matter set up in the original petition and in no way an amendment of the original petition, and sets up matter not triable except at law to a jury.

"3. Said proposed amended petition is an abandonment of the original cause of action and an attempt to set up a new cause of action triable to a jury at law in place of the equitable cause of action originally set up.

"4. Said proposed amended petition is filled with irrelevant matter, redundant matter, surplusage, and its allegations are indefinite and uncertain, and several different causes of action are not separately stated and numbered."

The objections were overruled and the defendants in error allowed to file the amended petition. A motion was then filed for plaintiff in error to strike the amendment from the files, which was overruled. The allegations of the amended petition in regard to the accounts of defendants in error against Frank H. Scott, the obtaining judgments, issuance, and return of executions, proceedings in

aid of the executions, and the relationship between Frank H. and Pliny Page Scott, E. H. Monroe, and C. B. Morrow, etc., were similar and in effect the same as the original petition, and it was further pleaded:

"These plaintiffs further allege that on the 14th day of July, 1891, the said Frank H. Scott was the owner of and in possession of a stock of goods, wares, merchandise, and fixtures of the value of upwards of $8,000, and was solvent and fully able to pay all his indebtedness in full.

"12. Plaintiffs further allege that on or about the said 14th day of July, 1891, the said defendants Frank H. Scott, E. H. Monroe, and Pliny Page Scott entered into an unlawful and fraudulent conspiracy and combination to defraud these plaintiffs and others of the creditors of the said Frank H. Scott and to hinder and delay them in the collection of their demands against the said Frank H. Scott.

"13. That in pursuance of the said unlawful and fraudulent conspiracy and combination against the rights of these plaintiffs the said Frank H. Scott did, on said 14th day of July, 1891, falsely pretend to sell and transfer his said stock of goods, wares, merchandise, and fixtures to the said E. H. Monroe, and the said E. H. Monroe did falsely pretend to purchase the same, and did take immediate possession of the same, and has since sold and disposed of the same and received and still holds the proceeds of the said sale.

"14. That it is claimed by said defendants that said pretended sale was for the sum of $7,000 and that $3,700 of said consideration was paid by said E. H. Monroe to said Scott in cash, and that $3,300 of said pretended consideration was in three promissory notes of said Monroe, as follows: One for $1,000, due in sixty days from date; one for $1,300, due in ninety days from date; and one for $1,000, due in one hundred and twenty days from date, all bearing interest from date at the rate of eight per cent per annum.

"15. Plaintiffs further aver that in pursuance of said unlawful and fraudulent conspiracy and combination, and to carry the same into effect, the said Frank H. Scott did, shortly after the said pretended sale, secretly depart from the said city of Fremont, and, as plaintiffs have since learned, went to the state of Colorado and took up his residence with the defendant Morrow; that shortly thereafter the said defendant Pliny Page Scott also secretly left the city of Fremont, and, as plaintiffs have since learned, also took up his residence with defendant Morrow in the city of Denver.

"16. That it is now claimed by the said defendants that the said notes so alleged to have been executed by the said Monroe were by the said Frank H. Scott taken to the city of Denver and there delivered to the defendant Pliny Page Scott, who it is alleged thereupon sold and delivered two of the said notes to the said defendant Morrow, who now claims to be the owner and holder thereof. These plaintiffs aver that if any such notes were executed and delivered by the defendant Monroe to the defendant Frank H. Scott that the same were executed and delivered for the purpose of cheating and defrauding these plaintiffs and others in the collection of their demands, and that if said notes were taken to Denver and delivered to the said Morrow, that the same was done for the purpose of carrying out said fraudulent intent; that said notes were transferred for no consideration and were taken by said Morrow with full knowledge of said fraudulent intent and for the purpose of aiding and abetting the perpetration of the said fraud; that the said Morrow was, at the time of the alleged purchase of the said notes by him, employed as a railroad conductor on the Burlington & Missouri railroad, was a man of no means and wholly unable to purchase the said notes and pay the consideration claimed to have been paid therefor; that the said Pliny Page Scott was a man of no means, said notes were placed in his possession without considera-

tion, and solely for the purpose of carrying out said fraudulent conspiracy and combination, of all of which the said Pliny Page Scott was fully informed.

"17. Plaintiffs further allege that the defendant E. H. Monroe now refuses to pay the said notes given, or alleged to have been given, to the said Frank H. Scott, or to apply the proceeds of said notes to the payment of these plaintiffs' claims or to pay said money into court for such purpose; that the said Frank H. Scott is wholly insolvent, and has no property liable to execution to satisfy said judgments, and these plaintiffs are without adequate relief at law, and that the fund in the hands of the said E. H. Monroe, alleged to be due on said notes, is all the property of said Frank H. Scott out of which these plaintiffs' said judgments can be satisfied."

The prayer for relief did not differ materially from that of the original petition. The answer of Monroe to the amended petition contained admissions of such facts as had been alleged in the original petition and admitted by the answer thereto, and they need not be restated here in detail. It pleaded affirmatively the purchase of the stock of goods by Monroe for a consideration of $7,000, the payment of a portion thereof in cash and the execution of the notes for the amount of the balance, that such purchase and sale were in good faith, and denied, either generally or specifically, all allegations of the amended petition in reference to conspiracy, fraud, intention to hinder, delay, or defraud creditors as connected with the sale of the goods, the money paid therefor, the notes or their delivery from Frank H. Scott to the father, Pliny Page Scott, and by him to Morrow, or lack of consideration for any or all of them, and states affirmatively his payment of one of the notes to Frank H. Scott, and on March 28, 1892, of the other two to C. B. Morrow, and further as follows:

"And for a second ground of defense and answer to the amended petition, defendant E. H. Monroe, answering for

himself only, states that as to the plaintiff Reid, Murdock
& Co. they have another action pending in this court
between themselves and Frank H. Scott, in which they
caused a large portion of the said goods sold by Scott to
Monroe to be attached to satisfy their judgment set up in
said amended petition, and that this answering defendant
thereafter commenced a replevin action in this court, and
therein replevied said attached goods and gave the usual
redelivery bond thereupon, and said replevin action is still
pending in this court undetermined, and said plaintiff
ought not to be allowed to maintain this action.

"For a third ground of defense and answer to the
amended petition the said E. H. Monroe, for himself only,
states that the garnishee proceedings and proceedings in aid
of execution commenced against him by the said several
plaintiffs, as alleged in said amended petition, have been
fully heard and determined in the courts where the same
were pending, and each and all of said proceedings and
garnishments have been duly dismissed, and this answer-
ing defendant duly discharged therefrom and in the prem-
ises, and the matters embraced in this action have been
fully determined in said garnishee and aid of execution
proceedings on the merits and this answering defendant
duly discharged in the premises, and therefore the plaintiff
ought not to be permitted to maintain this action."

When the case was called for trial a jury trial was de-
manded for plaintiff in error. This was refused and an
exception noted. The result of the trial was a finding and
judgment against Monroe, and he has brought the case to
this court for review. A motion for new trial was filed in
the district court and a petition in error filed with the rec-
ord in this court. The case was one which could have been
appealed, and counsel for plaintiff in error, judging from a
statement in the brief filed, view the case as here by appeal
and by proceedings in error, and that it can be so consid-
ered. "This course is not permissible. A party must

elect which remedy to pursue, and having filed a petition in error, she must be presumed to have selected that remedy. The case will, therefore, be treated as a proceeding in error." ( *Woodard v. Baird,* 43 Neb., 311.)

The question to which we will next direct our attention is, did the trial court err in overruling the objections to the amended petition, or did it state a new and different cause of action than was pleaded in the original petition? We do not think so. In the original petition the sale of the stock of goods was alleged to be fraudulent as to creditors, and it was further set forth that Frank H. Scott, Pliny Page Scott, his father, and C. B. Morrow, a brother-in-law, were seeking to secrete and dispose of the money or other proceeds of the sale, that it could not be reached by the creditors of Frank H. Scott or appropriated to the payment of his debts. In the amended petition the same elements were included in the cause of action, the statements in the pleading concerning them being somewhat amplified, and it was further alleged that the apparent transfer of the goods to Monroe, and his taking possession of them, and the pretended sale to him, were but acts in furtherance of the main design, the defrauding of the creditors of Frank H. Scott, in which Monroe was actively co-operating. This did not change the cause of action nor was a new one stated. The matters complained of in each petition were the alleged simulated sale and transfer of the stock of goods and the consequent fraud upon the creditors.

Another question is, did the trial court err in refusing the demand of plaintiff in error for a jury trial? The action, as disclosed by the petition and issues presented by the pleadings at the time this point was raised and decided, was one to set aside an alleged fraudulent transfer or sale, and to reach and appropriate to the payment of the judgments against the debtor his moneys or property which it was claimed was by certain devices concealed, so that it could not be made available for such purpose by the ordi-

nary methods, and was equitable in its nature, and hence triable by the court without the intervention of a jury.

It is urged that the defendants in error could have obtained full relief under the proceedings in aid of execution. The record discloses that the supplementary proceedings were prosecuted so far as to obtain the answer of Monroe, after which the court discharged him, and it is claimed that the defendants in error, in further pursuance of the statutory remedy in aid of execution, might have instituted an action at law against Monroe and litigated the questions involved in the case at bar. The right to the equitable action to determine the controversies existed prior to the enactment of the statute which provided the supplemental proceedings, and still exists. The statutory remedy did not supersede it or destroy it. We do not think the proceedings in aid of execution were intended to be substituted for actions in the nature of creditors' bills, while they may be made to serve in the main the same purpose, they often furnish an incomplete and imperfect remedy, and where, on the facts, such an action is proper, the one in the nature of a creditor's bill will be entertained. (*Oldenheimer v. Tressel*, 43 N. W. Rep. [Dak.], 941; *Ludes v. Hood*, 29 Kan., 49.)

It is claimed that the evidence was insufficient to sustain the finding and judgment. We have carefully examined and considered all the testimony, and will not in this opinion enter into, or discuss it, but our conclusion is that it was sufficient to support the conclusions and judgment of the trial court, and hence they will not be disturbed. (*Bond v. Dolby*, 17 Neb., 491; *Burlingim v. Warner*, 39 Neb., 497.)

In regard to the assignments of error in relation to the admission of certain testimony, it is argued by counsel on this point "that the evidence having been admitted over objection, the presumption is that the court used and relied on it in making its finding, and for this error the judgment ought to be reversed. To hold otherwise would be to place

the trial court on a plane of infallibility, and say, that notwithstanding it received incompetent evidence, after objection, deliberately, still the presumption is that it discovered its error before judgment and did not consider the incompetent evidence. In other words, it would be to hold that where a cause is tried to the court there shall be no review of erroneous proceedings on the admission of testimony, and that parties litigant are at the mercy of the single judge, as to what testimony shall be received. If we have reached that point we want to know it now." The rule as announced by this court is: "When a cause is tried to the court without the intervention of a jury, the judgment will not be reversed on the ground of the admission of immaterial or incompetent evidence, if sufficient material and competent evidence was introduced and admitted to sustain the finding of the court." (*Richardson v. Doty*, 25 Neb., 420.) In 1 Greenleaf, Evidence, section 49, the rule is laid down as follows: "In trials of fact, without the aid of a jury, the question of the admissibility of evidence, strictly speaking, can seldom be raised; since, whatever be the ground of objection, the evidence objected to must of necessity be read or heard by the judge in order to determine its character and value. In such cases the only question, in effect, is upon the sufficiency and weight of the evidence." (See, also, *Willard v. Foster*, 24 Neb., 213; *Ward v. Parlin*, 30 Neb., 376; *Tower v. Fetz*, 26 Neb., 710.) A review of the testimony has convinced us that this case is within the rule. Having reached this conclusion, we need not further consider or discuss these assignments.

The plaintiff in error set up as a defense to the amended petition and introduced testimony to show that one of defendants in error, Reid, Murdock & Co., had another action pending in the trial court; that in actions commenced there by Reid, Murdock & Co. attachments had been issued and levied on a large portion of the stock of goods claimed by

Monroe to have been by him purchased of Scott, to satisfy the judgments upon which the case at bar was predicated to the extent that the claims of this one party are involved in the action; that Monroe, to protect his rights, had commenced a replevin action in which the goods attached were retaken and in such action had executed and delivered a bond, and that the replevin action was still pending in the district court. In the case at bar, Reid, Murdock & Co., were of parties plaintiff in the district court and Monroe was of defendants. In the replevin action, the pendency of which it was sought to interpose as a defense or in abatement of this action, Monroe was the plaintiff and the officer who levied the attachment was defendant, although this officer's right to the property was based on the writ of attachment, and the rights or claims of Reid, Murdock & Co. would necessarily be involved in a trial of the replevin suit, and the character of the transactions between Monroe and Scott, which resulted in the conveyance of the goods to Monroe, whether fraudulent or not, would be fully inquired into and ventilated and the determination of this question be a governing one in the action, as it was in the case at bar, and if a trial of the replevin action resulted in favor of the officer, Reid, Murdock & Co. would be the recipients of the benefits derived from the judgment. If we consider the officer the real party defendant in the replevin action, then its pendency was no defense to the present action, the parties not being identical, as the officer was not a party to this suit. If we look beyond the form of the replevin case and the nominal defendant therein and consider Reid, Murdock & Co. the real party defendant, then the plaintiff in that (Monroe) is a defendant in this suit and the defendant in that is plaintiff in this, or, the parties in the two cases are reversed, and where relative positions in the case are thus changed it has been held that both suits may be in progress at the same time. ( *Walsworth v. Johnson*, 41 Cal., 61; *New England Screw Co. v. Bliven*, 3 Blatch. [U.

S.], 240; *Washburn & Moen Mfg. Co. v. Scutt*, 22 Fed., Rep., 710; *Barr v. Chapman*, 5 O. Cir. Ct. Rep., 69. *Contra: Crane v. Larsen*, 15 Ore., 349; 1 Ency. Pl. & Pr., 758, note.) It has also been determined that a plea of the pendency of an action at law is not available in an action of equity, and *vice versa*, and that this is also true where law and equity are administered by the same court. (1 Ency. Pl. & Pr., 752, note.) This court has expressed itself in favor of the contrary doctrine in the case of *State v. North Lincoln Street R. Co.*, 34 Neb., 634, the present chief justice writing the opinion. It was said: "It may be safely stated that as a general rule the pendency of a former action between the same parties may be shown in abatement, where a judgment in such suit would be a bar to a judgment in the second suit brought in another court of concurrent jurisdiction. That one is an equitable action and the other a suit at law is immaterial, so long as both suits are based upon substantially the same facts. Cases are to be found in the books, some of which are cited in relator's brief, which hold that the plea of the pendency of a prior action is not good when the proceedings are not identical or the forms of the actions are not the same in both suits. In other words, the pendency of an action at law will not abate a suit in equity, and *vice versa;* but such rule is not sustained by the current of modern authorities, and there is no good reason why it should obtain in this state under the Code, where the forms of procedure, which, under the old system of practice, distinguished legal and equitable actions, are abolished." In the discussion of the subject of "Another Suit Pending," in a late work on pleading and practice is the following statement: "But it may be laid down as a general proposition where the substantial fact or facts upon which the plaintiff's right to relief is based are identical in the two actions, and the relief obtainable in the first includes all the relief sought in the second action, the first will abate the second, although the actions differ in

matters of form, and in the relations of the defendant to the infringement of the plaintiff's right." (1 Ency. Pl. & Pr., p. 763, and see citations in note.) If we say we will look beyond the forms of action and the nominal parties defendant in the replevin case, and hold Reid, Murdock & Co. to be the real party in interest, the reason being that the suit against Scott and the issuance and levy of the writ of attachment on the stock of goods claimed by Monroe, at the instance and by the directions of such party, forced Monroe to commence the action of replevin to protect his rights, the issue in the replevin case merely being was the sale of goods to Monroe fraudulent or in good faith, and its determination settling the question of whether the goods could be sold under the attachment levy and the proceeds appropriated to the payment of the claims of Reid, Murdock & Co., and the issue in the case at bar being in regard to the same transaction and its fraudulent or good faith character, the object of the suit, in so far as it involves the rights of Reid, Murdock & Co. and Monroe to have the transactions between Monroe and Scott held void or set aside and the proceeds of the stock of goods paid on the judgments, which embody the identical claims in suits wherein the writs of attachment were issued, and we have in view the pith of the contention of plaintiff in error under his plea of pendency of another action. It was held in *Yantis v. Burdett*, 3 Mo., 457, that a plea stating that an action on a judgment was commenced while the plaintiff was endeavoring to enforce the same judgment by an execution was good; but whether in the present controversy the conditions and subject-matters of the cases and the relations of the parties to them established the plea and constituted it an available one as to the main element or point involved, is not, as we view the pleading and evidence, sufficiently presented to call upon us to determine it. It is clear that a plea of the pendency of the replevin suit, without any showing of its connection with and being

the outgrowth of the attachments, would have been of no effect as a plea in abating the present action, and it devolved upon the party interposing the plea, to sustain his contention, to sufficiently state and prove all things necessary, not only the replevin action and its pendency, but also, among other matters, that the attachments were in furtherance of the satisfaction of the same claims as were included in the judgments, the basis of this action, and that the attachments were still in existence and force, not abandoned, withdrawn, or discharged.   This last he neither pleaded nor proved; hence the plea, even if it could have been sustained, if the question had been fully presented for adjudication, which we do not decide, was not good and must fail.   It is true that in a cross-examination of a clerk of the district court the statement was called out that no orders had ever been made dissolving the attachments, but this did not supply the defect in the pleadings or sufficiently show the continued pendency of the attachments.   The judgment of the district court is

AFFIRMED.