## CARR *v.* LYLE.

EQUITY JURISDICTION — ANTENUPTIAL CONTRACTS — PROBATE COURTS.

The jurisdiction of equity to entertain a bill by executors against decedent's widow to enforce an antenuptial contract, to compel defendant to abide by a settlement made thereunder, and to restrain ejectment for dower, is not barred by the pendency in probate court of proceedings by the widow for her statutory allowances, her right to which is resisted on the ground of such contract; the probate court not having authority to grant the full measure of relief asked by the bill.

Appeal from Van Buren; Yaple, J., presiding. Submitted April 2, 1901. Decided May 21, 1901.

Bill by John R. Carr and Levi Lyle, executors of the last will and testament of John Lyle, deceased, against Emma V. Lyle and others, to enforce an antenuptial contract. From an order overruling a plea to the bill, defendant Emma V. Lyle appeals. Affirmed.

*Thomas J. Cavanaugh, M. L. Howell,* and *Edward Bacon,* for complainants.

*McKnight & McAllister,* for appellant.

MOORE, J. The following statement of facts is substantially taken from the brief of the solicitors for com-

plainants, and is fully supported by the record: This is an appeal from an order overruling a plea to a bill for the construction of a will, and for specific performance. The bill states the following matters: That August 19, 1896, the first wife of John Lyle, and mother of his children, died; that, for many years before his death, John Lyle had been a resident of the county of Van Buren, living on a farm, and was possessed of lands and personal property to the amount of $95,000, and indebted at the time of his death in the sum of $15,000; that Emma V. Lyle, while living in the family of John Lyle as a domestic, was married to one Charles Marshall, a hired man of said John Lyle, from whom in July, 1875, she was divorced; that for more than 25 years next prior to the 8th day of March, 1897, she had been intimately acquainted with the financial circumstances of said John Lyle.

March 8, 1897, the parties made an antenuptial contract, in which Emma V. Lyle released dower, allowances, and distributive share for a consideration of $5,000. March 9, 1897, John Lyle made a will, which was fully understood by both parties, and contains provision for payment in full of the consideration for the antenuptial contract. March 10, 1897, the marriage provided for in the contract took place; John Lyle being then of the age of 83 years, and Emma V. Lyle being of the age of 47 years. After the marriage the husband and wife lived together in the village of Paw Paw; Emma V. Lyle acting in the capacity of a clerk for her husband in his business, and becoming familiar with all his financial circumstances.

October 5, 1899, John Lyle died. November 13, 1899, the will of John Lyle was duly probated on petition of Emma V. Lyle, a copy of the will and petition being annexed to the bill, and letters testamentary to the complainants were issued. After the issuing of the letters testamentary, Emma V. Lyle applied to the executors for the unpaid consideration provided for in the said contract and will, and received such consideration in full settlement of her claims against the estate, and in full perform-

ance of said contract. That, relying on such settlement, the executors proceeded to administer said estate and to carry into effect the instructions contained in the will, sold land belonging to the estate to the amount of $34,000, and turned over a number of devises, legacies, and bequests mentioned in the will, and performed other acts in discharge of the trust, in reliance upon said contract and the full performance thereof. Said bill claims that, as a result, said Emma V. Lyle is estopped from making any further claim against said estate. January 4, 1900, Emma V. Lyle notified the executors that she would attempt to repudiate her contract, and filed her claim in the probate court for statutory allowances. The executors answered her claim, setting up the contract and will, including the codicil. She replied, and now threatens to bring ejectment against the executors and legatees for her dower in the real estate.

March 2, 1900, the bill in this suit was filed, and alleges that the antenuptial contract is valid and the attempted repudiation thereof will be inequitable, and prays relief, including specific performance of the contract, enforcement of equitable estoppel, and injunction against suit for dower and the prosecution of proceedings for widow's allowances; also prays for general relief. There was due service of subpœna, but no answer; the only pleading on behalf of Emma V. Lyle being her plea, setting forth the proceedings in the probate court, the decision against her, and her appeal, as a complete defense to the entire bill. Her reply to the protest and claim of the executors filed in the probate court claims that, if said antenuptial contract exists, it is void, for reasons among which are the following: Want of knowledge on her part as to the extent and value of John Lyle's estate, and of her legal rights and interests, and alleging, substantially, that her signature to the contract was obtained by artful concealment, false representations, and fraud, and that there was no discovery by her of the frauds and wrongs aforesaid until after she had received certain money and securities

from the executors; that, as soon as she made such discovery, she tendered restitution and insisted on her rights as widow. March 6, 1900, the decision in the probate court was entered. The appeal came afterwards, both the decision and the appeal being after the commencement of the chancery suit. August 19, 1900, the plea was duly overruled, and 20 days allowed for defendant to answer.

The record, as made, presents the question whether the complainants, on account of the proceedings had and taken in probate court, are thereby deprived of the right to proceed in a court of equity (1) to enforce the antenuptial contract; (2) to compel defendant Emma V. Lyle to abide by the settlement made with the executors in accordance with the terms and conditions of the antenuptial contract, and her consequent election to take under the will; (3) to enjoin the commencement of suits in ejectment which it is alleged in the bill were threatened by her. Counsel for Mrs. Lyle contend that the probate court had jurisdiction to try and determine these questions, and, having entered upon the trial and rendered a judgment upon the same, such proceedings are a bar to a bill in equity filed by the complainants for the same purpose. The petition of Mrs. Lyle in the probate court was for the allowances provided by the statute to the widow during the settlement of the estate. While, in the determination of whether the petition should be allowed or not, the probate court might very properly take into consideration the antenuptial agreement, the order which it would make would be to either grant or refuse the allowances prayed for. The relief asked in the bill in chancery is much more than could be decided by the probate court in the proceeding then before it. The questions involved in this proceeding are fully discussed in the late cases of *Thompson* v. *Tucker-Osborn*, 111 Mich. 470 (69 N. W. 730), and *Koch* v. *Koch*, *ante*, 187 (85 N. W. 455). We do not deem it necessary to do more than call attention to these cases.

The decree is affirmed, with costs.

The other Justices concurred.