REIS v. APPLEBAUM.

1. ABATEMENT AND REVIVAL—PLEA OF SUIT PENDING — IDENTITY OF ISSUES—FRAUD.

A suit for the foreclosure of bonds of a corporation, in which certain bondholders intervened for the purpose of enforcing any existing liability of stockholders upon subscriptions to stock, was not identical, as to the issues, with a subsequent suit by the same and other bondholders, charging fraudulent conduct on the part of certain stockholders and directors who falsely stated in the articles of association that $100,000 was paid in, which induced complainants to purchase the bonds held by them, and praying for relief on the basis of fraud; the substantial character of the relief being different in the two suits, and other parties being joined.

2. SAME—ACTION PENDING—EQUITY.

In order that a suit may abate upon defendants' plea of another suit pending, it must be made to appear that the relations of the parties and the relief sought are practically identical in both proceedings.

3. SAME.

If the second cause of action would decide much more than the first, it should not abate.

Appeal from Saginaw; Gage, J. Submitted April 11, 1912. (Docket No. 147.) Decided May 31, 1912.

Bill by Joseph Reis and others against Isaac Applebaum and others for fraud and other wrongful conduct in the incorporation of the Detroit, Flint & Saginaw Railway Company. From an order sustaining a plea to complainants' bill, defendants appeal. Reversed.

*Henry E. Naegely,* for complainants.

*Rundell & Stockton,* for defendant Russell.

STONE, J. After the filing of the bill of complaint in this cause, the defendant John A. Russell filed a plea to

the said bill.   The complainants noticed said plea for argument.   Upon the conclusion of the argument the court entered an order allowing the plea.   The complainants not having moved under the rule for leave to amend their bill, and not having elected to take issue upon the plea of said defendant, a decree was entered dismissing the bill of complaint, without prejudice as to said defendant Russell, with costs against complainants.   The complainants have appealed.

It may be said that the sole question raised is whether or not the circuit court for the county of Saginaw, in chancery, has any jurisdiction to hear and determine the questions raised by the bill of complaint, in view of the question raised in the pleadings.   The pleadings are substantially as follows:   There are 23 complainants in this cause who state that they are severally owners of bonds issued by the Detroit, Flint & Saginaw Railway to the amount of $54,000, as specified in the schedule attached to the bill.   The schedule states the amount of the ownership of said bonds in each party.

(1) The bill states that the Detroit, Flint & Saginaw Railway was duly organized as a corporation under the laws of the State of Michigan entitled, "An act to provide for the construction of train railways," and that said company was organized for the purpose of building, owning, and operating a line of electrical railway from the city of Saginaw, in the county of Saginaw, to the city of Flint, in the county of Genesee, and elsewhere, and its articles of incorporation were filed on, to wit, November 27, 1903, according to law.

(2) Complainants state that said articles of association, among other things, stated the assets of the company paid in to be $100,000; that the incorporators of said company were, to wit, Timothy Nester, John A. Russell, Arthur S. Nester, Thomas G. Sullivan, Timothy E. Tarsney, and Henry P. Wickham, all of Detroit, Mich.

(3) Complainants show that said Detroit, Flint & Saginaw Railway, for the purpose of financing the project

and proceeding with the construction and equipment of said electrical railway, on, to wit, the 30th day of January, 1904, at a meeting of its stockholders, authorized the issue of bonds to the amount of $1,000,000, and the giving of a trust mortgage to the Detroit Trust Company, as trustee, to secure the said bond issue, and the said bond issue as authorized was to be dated December 1, 1903, payable December 1, 1923, to bear interest at 5 per cent. per annum, payable semi-annually.

(4) Complainants show that they purchased for valuable consideration certain of the bonds so authorized to be issued, of the value and in amount of $54,000, in the spring and summer of the year 1904. Complainants aver that at the time of the purchase they relied upon the statements of said company as true, and believed at that time that there was actually paid into the treasury of said company the sum of $100,000 in cash, being the amount specified in said articles of incorporation as paid in.

(5) Complainants aver that, at the time of their purchase of the aforesaid bonds, the amount of money as specified in the articles of association was not paid in, and that the only money that came to the said company was the money realized from the sale of the bonds of said company which were authorized to be issued and sold as aforesaid, and that the statement contained in said articles of incorporation in that respect was false, untrue, and fraudulent, and a fraud on the rights of complainants; and that by reason of said misrepresentation said company became bankrupt, and the value of said bonds did not exceed six cents on the dollar, and any right of action against said company was without force to reimburse said complainants for their money so advanced.

(6) Complainants aver that one Isaac Applebaum, of Detroit, commenced loaning money to the said company as early as, to wit, the 10th day of October, 1904, and taking the promissory note of said company indorsed by Timothy E. Tarsney and Thomas G. Sullivan, and also taking bonds of the said railway company as collateral

security. And that Mark Mitshkun is the brother-in-law and agent in loaning money of said Isaac Applebaum; that said Isaac Applebaum is in the iron and steel machinery business and engaged in the loaning of money in the city of Detroit, and both said parties were entirely familiar with and well knew the financial situation and condition of said Tarsney and Sullivan and the said railway company prior to and at the time said Applebaum began the loaning of money to said railway company upon its promissory notes and indorsements aforesaid; and that said Applebaum held as collateral security in the sum of, to wit, twice the face value of said notes in the aforesaid bonds of said company, and that defendants Edwin Henderson and Alex. J. Groesbeck were the attorneys for said Applebaum and Mitshkun during all the time aforesaid.

(7) Complainants represent that, between the time of the organization of said company and October, 1906, a portion of said road was built, and that the road was completed and operated as an electric railway between the city of Saginaw and the township of Frankenmuth, in said county of Saginaw, a distance of 13 miles, and that bonds to the extent of, to wit, $410,500 were issued and disposed of by the company, including the $54,000 worth sold for a valuable consideration to the complainants, and that $69,000 thereof were turned over to a construction company as collateral for work, labor, and materials performed and furnished to said company, and that $274,000 thereof was retained by the officers of the company.

(8) Complainants represent that prior to October 11, 1906, said Applebaum, Mitshkun, Henderson, and Groesbeck were familiar in every way with the organization, construction, and operation of said railway, and well knew all the facts, and had complete knowledge regarding the financial condition and situation of said railway from its commencement, and that with full knowledge thereof, and well knowing that said company was fraudulently incorporated contrary to the laws of the State of Michigan, and that thereby the sum of $54,000 was ob-

tained from complainants by such fraudulent misrepresentation and incorporation, and that complainants thereby bought the bonds of said company aforesaid, and that said company did not have the capital paid in as stated in its articles of incorporation; said Applebaum, Mitshkun, Henderson, and Groesbeck becoming directors of the said company and commencing to operate said railway, having theretofore acquired shares of stock of said company in a sufficient amount to elect themselves directors and take charge and control of said railway, said parties owning shares of stock as follows: Isaac Applebaum, 2,082 shares; Mark Mitshkun, 25 shares; Alex. J. Groesbeck, 25 shares; Edwin Henderson, 25 shares, and said Isaac Applebaum owning the further number of 5,060 shares.

(9) Complainants show that on the 20th of November, 1906, the Detroit Trust Company, as trustee, filed a bill in chancery to foreclose the mortgage given by said railway company, and that thereupon the circuit court for the county of Genesee, in chancery, where said bill of complaint was filed, duly appointed the said Detroit Trust Company receiver of said railway, and that said railway company and all of its rights, property, and assets of every name and kind were taken into possession of said receiver, and said railway property was duly operated by said trust company as receiver until its discharge, and that all the rights of complainants as bondholders of said company were cut off and foreclosed against said railway company by said receiver's sale of the property of said company.

(10) Complainants further represent that said Isaac Applebaum on, to wit, June 25, 1908, became the purchaser of all of the property of said company and took the same into his possession, and that said property so acquired was thereafter sold and turned over to a company incorporated under the laws of the State of Michigan, which said company was composed of said Mitshkun, Henderson, Groesbeck, and Nelson A. Tabor personally,

and as trustee, which said sale was duly confirmed by the circuit court. for the county of Genesee; and said new company further extended the railway by additional construction from the county of Saginaw to the city of Flint, in Genesee county, and that said parties, through said corporation, are operating all of said property formerly owned by the Detroit, Flint & Saginaw Railway as a part of the Flint & Saginaw Railway, under which name their corporation is existing and doing business.

(11) Complainants further show that the officers and those in control of the Detroit, Flint & Saginaw Railway at the time it went into the hands of a receiver were the same persons and the same interests in every way as those which purchased from and through the receiver's sale aforesaid, and which secured all of the property of the Detroit, Flint & Saginaw Railway at said receiver's sale.

(12) Complainants show that said Applebaum, Mitshkun, Groesbeck, Henderson, and Tabor all had positive knowledge and well knew of the initial illegality and fraudulent incorporation of said Detroit, Flint & Saginaw Railway, and by taking over said property, well knowing that complainants and divers other persons had put money into said company by the purchase of bonds as aforesaid, and were innocent of any knowledge of the fraudulent incorporation, said parties placed themselves legally and equitably in the same position and situation as the original incorporators, and are now reaping, and have reaped, and will continue to reap, the profits of the money so advanced and paid in by complainants to said company for the bonds as aforesaid.

The bill of complaint prays:

*First.* That the defendants Timothy Nester, John A. Russell, Arthur S. Nester, Thomas G. Sullivan, the administrator of the estate of Timothy E. Tarsney, deceased, Henry P. Wickham, Isaac Applebaum, Mark Mitshkun, Alex. J. Groesbeck, Edwin Henderson, Nelson A. Tabor, and Nelson A. Tabor, trustee, may be required to make full answer to the bill, their answer under oath being waived.

*Second.* That the legal liability and responsibility for the issuance and payment to the complainants of the several amounts of money represented by the bonds aforesaid of complainants may be aided, established, and decreed against said defendants and in favor of the said complainants, and that said defendants may be required by an order of the court to pay to the complainants the several said sums of money according to the tenor and effect as provided for in the bonds aforesaid of said complainants.

*Third.* That complainants may have such further relief in the premises as equity may require.

The plea of the defendant John A. Russell, filed and verified in accordance with the rule, sets forth:

(1) That before the time of filing the bill of complaint in this cause, on, to wit, November 20, 1906, a bill of complaint was filed by the Detroit Trust Company, as trustee of a certain mortgage upon all the property of the Detroit, Flint & Saginaw Railway mentioned in complainants' bill of complaint in the circuit court for the county of Genesee, in chancery, for the purpose of foreclosing the mortgage described in complainants' bill, which said mortgage was given to secure, among others, the bonds now claimed to have been owned by the complainants, and is the same mortgage mentioned in the bill of complaint.

(2) That said Detroit, Flint & Saginaw Railway was made defendant in said cause, which will hereafter be called the "foreclosure suit," and appeared by counsel and filed its answer, admitting practically all of the allegations of the bill of complaint in the foreclosure suit, among others, that said Detroit, Flint & Saginaw Railway was utterly insolvent.

(3) The court, on the application of the complainant in the foreclosure suit, appointed the Detroit Trust Company receiver of all the properties of the Detroit, Flint & Saginaw Railway by an order made on the day of filing said bill, and the receiver thereupon entered upon the discharge of its duties.

(4) The complainants in this cause, with the exception of Sarah Ingersoll who appears to have succeeded to the

ownership of bond No. 81 of said company, together with James H. Davitt, by James H. Davitt, their solicitor, filed their petition in the foreclosure case on August 26, 1907, alleging the liability of the stockholders of the Detroit, Flint & Saginaw Railway to said complainants, including in their petition a list of stockholders of the Detroit, Flint & Saginaw Railway, among whom this defendant was one, and praying for leave to intervene and to take such steps as they found necessary to protect their rights, and for general relief. Sarah Ingersoll, who now appears to be the owner of bond No. 81, seems to have succeeded to Mary Garey at that time owning or claiming to own bond No. 81. That the bonds which complainants respectively now claim to own are the same bonds which the said complainants claimed to own at the time they filed their petition in the foreclosure suit.

(5) The said Detroit Trust Company answered said petition and alleged that it was advised that it was not its duty as receiver to enforce any liability of the stockholders of the Detroit, Flint & Saginaw Railway to its creditors, but that it was ready and willing so to do when authorized by the court.

(6) That on March 28, 1908, James H. Davitt, as solicitor for the intervening bondholders, filed a protest against allowing certain bonds, and praying that these bonds be disallowed.

(7) That said James H. Davitt, as solicitor, then filed a replication to the answer of the Detroit Trust Company.

(8) That the said foreclosure case proceeded to trial, and on April 13, 1908, a decree was made in that case decreeing a sale of all of the property of the Detroit, Flint & Saginaw Railway covered by the mortgage for the satisfaction of the bondholders; and specially reserving for future consideration of the court the question of the liability of the stockholders of the Detroit, Flint & Saginaw Railway. And on the same day an order was made requiring all parties to the record as defendants or interven-

170 MICH.—33.

ers, and all other persons who claimed to own bonds of the Detroit, Flint & Saginaw Railway, to appear and prove their title and ownership of said bonds.

(9) That pursuant to the decree of April 13, 1908, the property of the Detroit, Flint & Saginaw Railway was sold at public auction, and pending such sale, and on June 22, 1908, said James H. Davitt, as solicitor for the interveners, filed objections to the court's reducing the price fixed by the court as a minimum price at which the property should be sold.

(10) That said interveners filed their objections to the confirmation of the sale of said property of the Detroit, Flint & Saginaw Railway on July 3, 1908, which objections were considered by the court and an order *nisi* made on motion of the interveners on the same day.

(11) That on April 10, 1908, the Detroit Trust Company filed its petition in the foreclosure suit praying that the claimants of bonds appear and prove their title and ownership of their claimed bonds, and praying also that all defendants and interveners who were holders of bonds appear and prove their interest. That on April 13, 1908, the court made an order in the nature of a citation requiring the bondholders, and including interveners, to appear and prove their interest, and providing for service of a certified copy of the order by mail, and proof of service was made by affidavit filed in the cause. That at the hearing of such matter the complainants in this cause were present by their solicitor James H. Davitt and took part in the proceeding.

(12) That on May 6, 1908, the court made an order in the foreclosure case determining the ownership and title of the bonds, and reserving control of the fund apportioned to any bonds owned by any of the original stockholders. That defendant Russell's bonds were subjected to that order and his money is still held by the court.

(13) That the Security Trust Company of Detroit has filed a petition in the foreclosure suit praying for distribu-

tion of a part of the fund of which defendant's bonds also form a part, which petition is still pending.

(14) That on May 4, 1911, said James H. Davitt, in his own behalf and in that of all others similarly situated, filed in the foreclosure suit a petition for the revival of the receivership, and for other relief, which motion is still pending. Wherefore the said defendant prays the judgment of this court whether he ought to make answer to the said bill, and prays to be dismissed, with his costs to be taxed.

We are unable to agree with defendants' contention that the subject-matter and the issues raised in the foreclosure proceeding were identical with the issues raised in this cause. It appears by the bill of complaint in the instant case that the complainants are here seeking to hold the defendants as tort-feasors for the fraud and misrepresentation which they claim was practiced upon them in inducing them to purchase the bonds in question. It is not a proceeding to enforce the statutory stockholder's liability. Neither by the plea nor by an inspection of the interveners' petition in the foreclosure suit does it appear that the issue there tendered was the same as that presented here.

We here express no opinion whether the bill of complaint in the instant case presents a case for equitable relief, nor whether by the case stated complainants may be entitled to a decree against any or all of the defendants. This question is not now before us.

In order for this plea to prevail, it should appear that the identity between the two suits as to the issue is complete. It is difficult to understand from the plea and from the petition in the foreclosure suit how any relief could have been obtained in that suit on account of the alleged fraudulent action of the incorporators or directors of the original railway company, or of the men who became the purchasers of the road at the receiver's sale, as is sought here. The parties are not the same, defendant Tabor not being before the court in the foreclosure suit. The sub-

stantial character of the relief sought is so different that it must be said that the causes are not identical, or even similar.

It is well said that it is necessary for the party seeking the abatement of the present action, by reason of the pendency of that already commenced, to plead and prove the connection of the former action to the same subject-matter; the relations of the parties to be the same as that in the case in which the plea is interposed, and that the relief sought is practically identical with that sought in the second action. *Monroe* v. *Reid, Murdock & Co.*, 46 Neb. 316 (64 N. W. 983); *LeRoy* v. *Collins*, 165 Mich. 380 (130 N. W. 635). Another test sometimes applied is, Will the same evidence support both actions? *Gates* v. *Goreham*, 5 Vt. 317 (26 Am. Dec. 303).

We have held that, where the second cause of action would decide much more than could be decided by the first suit, the second cause of action should continue and not abate. *Carr* v. *Lyle*, 126 Mich. 655 (86 N. W. 145).

Applying the above tests to the case, we are of opinion that this cause of action is not the same as the one described in the petition in the foreclosure suit, and that the plea of the defendants should be overruled.

The decree of the circuit court is reversed, with costs, and the cause remanded for further proceedings under the rule.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.