WILLIAM LAMB v. H. J. THOMPSON.

[FILED FEBRURAY 24, 1891.]

1. **Sale:** APPEAL: IDENTITY OF ISSUES. The plaintiff brought suit in the county court against C. and L. to recover the purchase price of goods sold and delivered, where judgment was recovered against L. alone, who took an appeal. In the district court the plaintiff filed his petition, based on the same cause of action, and demanded judgment against L. alone. *Held,* That the issue was not changed.

2. ——: PAYMENT: BURDEN OF PROOF. When an action is brought upon an account for goods sold and delivered, the burden of proof is upon the defendant to prove payment.

3. ——: UNDISCLOSED PRINCIPAL: LIABILITY. When a party purchases goods on credit in his own name for another, without disclosing the name of the principal, the seller may recover the purchase price from the principal when discovered.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*Griggs & Rinaker*, for plaintiff in error :

The American rule is that upon sale to an agent, supposed to be a principal, the seller may look to the real principal for payment, unless latter has settled with the agent or the state of their account makes it inequitable to hold the principal. (Parsons, Contracts, 63 ; Story, Agency, 449 ; *Thomas v. Atkinson*, 38 Ind., 248 ; *Knapp v. Simon*, 96 N. Y., 284 ; *Ketchum v. Verdell*, 42 Ga., 534; *Emerson v. Patch*, 123 Mass., 541.) ˙ And this is the rule laid down by Lord Tenterden, 9 Barn. & Cres., 78, though dissented from in three English cases.

*J. E. Cobbey, contra* :

It is not necessary to go back to Lord Tenterden's time for authority on the questions here raised. The uniform rule now is that the undisclosed principal cannot escape liability even if the sale was made on the sole credit of the agent (*Hall v. Williams*, 27 Vt., 405; *Collins v. Butts*, 10 Wend. [N. Y.], 399 ; 1 Cow. [N. Y.], 290 ; *Atlanta, etc., R. Co. v. Texas*, 9 S. E. Rep. [Ga.], 600 ; *Sidenbach v. Riley*, 111 N. Y., 560) ; and even if the purchase was contrary to the positive orders of the undisclosed principal (*Hubbard v. Tenbrook*, 16 Atl. Rep. [Pa.], 817).

NORVAL, J.

This suit was commenced in the county court of Gage county by the defendant in error against William Lamb, the plaintiff in error, and one J. B. Christopher, for the sum of $26.57, with interest thereon, on an account for goods sold and delivered. The court rendered judgment for the amount claimed in favor of the plaintiff and against Lamb and dismissed the action as to Christopher. The defendant Lamb appealed to the district court.

The plaintiff filed in the district court a petition demanding judgment on the same account, against Lamb alone.

29

The defendant answered:

1. By a general denial.

2. That the cause of action set forth in the petition is not the same sued upon in the court below, and that the parties are not the same as in the county court.

A trial was had to the court, with finding and judgment for the plaintiff for the sum of $26.25 and costs.

A motion for a new trial was overruled, and the defendant prosecutes a petition in error.

The first point relied upon for a reversal of the judgment is that the suit was not tried upon the same issue in district court as in the county court. It is well established that a case is to be tried in the district court upon the issues that were presented in the court from which the appeal is taken, with the exception of matters arising after the former trial. (*O'Leary v. Iskey*, 12 Neb., 136; *Baier v. Humpall*, 16 Id., 127; *Fuller & Johnston v. Schroeder*, 20 Id., 631.)

Was this rule violated in the case at bar? The cause of action set up in the petition in the district court was the same as declared upon in the court of original jurisdiction. The action in the appellate court was based upon the identical bill of goods described in the petition in the county court, the only substantial difference in the petitions being that no recovery was asked in the district court against Christopher. The county court held that Christopher was not liable. The plaintiff was doubtless satisfied with that finding, for he abandoned the suit as to him in the district court. There was no change in the issue tendered by the plaintiff.

Counsel next urges that the proof fails to show that the plaintiff had not been paid for the goods. It is sufficient answer to this objection to remark that no such question was tendered by the pleadings. If the defendant relied upon payment as a defense he should have pleaded it in his answer. This he failed to do. It was for him to allege

and prove payment. He did neither. (*Magenau v. Bell*, 14 Neb., 8; *Tootle v. Maben*, 21 Id., 617.)

Is the judgment contrary to the law and the evidence? The plaintiff in error on the 18th day of June, 1887, was the owner of a book and stationery store in the city of Beatrice, and on that day he entered into a written contract for the sale of the same to James B. Christopher for the sum of $4,800. Of this sum $2,600 was paid by transferring to Lamb school land leases for 1,280 acres of Colorado lands, and by deeding to Lamb eighty acres of land situated in Smith county, Kansas, subject to a $200 mortgage. The remaining $2,200 the contract provided should be paid in two equal annual payments, the same to draw ten per cent interest until paid. In accordance with the terms and stipulations contained in the contract Christopher took possession of the stock and ran the store in his own name until January 24, 1888, when the entire business was sold to one Payne, who paid Christopher $160 in cash, gave him his note for $600, and executed and delivered to Lamb a note secured by a chattel mortgage on the stock for $2,200 and interest, the amount of the unpaid purchase money due from Christopher to Lamb.

During the time Christopher carried on the business one Stonebreaker, who had been a clerk for Lamb, had charge of the store and bought goods in Christopher's name to replenish the stock. Stonebreaker, pursuant to instructions given him by Christopher, ordered the goods for the value of which this suit is brought. They were billed and shipped in Christopher's name and went into the store.

The plaintiff claims that Lamb never in fact parted with the title to the stock of goods. That while the business was conducted in Christopher's name, it was for the benefit of Lamb, and that the latter is liable in this action as an undisclosed principal for the price of the goods sold by the plaintiff. In the written contract entered into between

Lamb and Christopher the former agreed to sell and convey to the latter the goods when Christopher had paid the full consideration. The contract provided that Christopher should take possession and sell in the usual course of trade by retail, and that the goods which he should put into the business to replenish the stock before the entire purchase money was paid "shall belong to and be the property of said Lamb in lieu of the goods which said Christopher may chance to sell as aforesaid." The stock was to be insured in Lamb's favor and he had authority, whenever he deemed himself in danger of losing the goods, to at once take possession of the original stock, as well as the goods put in by Christopher, and sell the same at private sale and pay the proceeds to Christopher, less the unpaid purchase price, interest, and expenses of sale. The contract also contains the stipulation: "As soon as the said $2,200, with interest and taxes, are fully paid by said Christopher, Lamb will convey said goods as above stipulated, but up to the time when the said $2,200 and interest and taxes are paid the said goods shall be the property of said Lamb, and said goods shall be the property of said Lamb until he has been entirely paid as above provided and has given a bill of sale, in addition to this contract. In the sale of such goods as the said Christopher may hereafter dispose of by retail as aforesaid it is hereby understood that he acts alone as agent of said Lamb and not as owner."

It is obvious that Lamb only agreed to convey and that he never parted with his title to the stock of goods. Christopher never paid any part of the $2,200 so as to entitle him to a conveyance. No bill of sale was ever made by Lamb to Christopher. The proof shows it was agreed that Stonebreaker should remain in the store and retain the management and that he purchased the goods for the business after the contract was made. Lamb repeatedly told him to see that the stock did not run down and to keep as many

goods in the store as there were when Christopher took charge. At one time Stonebreaker informed Lamb that he was going to quit work in the book store and Lamb asked him to remain, saying that he should not lose anything by it, and that if he did quit he would take possession of the store. There is testimony tending to show that Lamb negotiated with and sold the stock to Payne, making him a bill of sale therefor. We are satisfied from the proofs that as to the purchase of the goods from the defendant in error Lamb was an undisclosed principal. The rule is almost universal that when a party purchases goods on credit in his own name for another without disclosing the name of the principal, the seller may recover the purchase price from the principal when discovered. (Story on Agency, sec. 446, and cases cited in note ; *Merrill v. Kenyon*, 48 Conn., 314; *Wheeler v. Reed*, 36 Ill., 81 ; *Barker v. Garvey*, 83 Ill.,184; *Pope v. Meadow Spring Distilling Co.*, 20 Fed. Rep., 35 ; *Hubbard v. Tenbrook* [Pa.], 16 Atl., 817.)

The judgment of the district court is

AFFIRMED.

THE other judges concur.