DAVID G. KLEIN v. JOHN PEDERSON.

FILED JULY 1, 1902. No. 12,041.

Commissioner's opinion. Department No. 3.

Fraud: PARTY IN PARI DELICTO: ILLEGAL ACT: BASIS FOR RECOVERY: PUBLIC POLICY: RELIEF. A party *in pari delicto* can not make his illegal act a basis of recovery; but where the stronger mind takes possession of the weaker, or where through ignorance and without any intent to violate the law, one is led by fraud and misrepresentation to the performance of an act against public policy, the courts will not deny him relief against those whose fraud persuaded him to the act, and who seek to profit therefrom.

ERROR from the district court for Lancaster county. Tried below before FROST, J. *Affirmed.*

*Thomas J. Doyle,* for plaintiff in error.

*Stephen B. Pound, contra.*

DUFFIE, C.

This is an action at law to recover the sum of $40 paid by the defendant in error to the plaintiff in error to prevent a criminal prosecution. There was a trial to the court without a jury and finding and judgment for the plaintiff below, from which the defendant has taken error to this court.

The record discloses the following facts: Pederson, the

defendant in error, is a farmer living some fifteen miles distant from the city of Lincoln. He is a Dane and unable to read or write the English language and wholly unacquainted with court proceedings. For three or four years previous to the transaction in question he had furnished one Yanow, a groceryman, with butter, for which Yanow paid something above the market price on account of its good quality and because some of his customers desired to be furnished butter of this kind and quality. Klein, the plaintiff in error, is a butcher, whose place of business joins Yanow's grocery store, the two being connected by an archway. November 18, 1899, Pederson and his wife brought some butter to Yanow's store, which was taken from the buggy by Harry Yanow, a brother of Henry Yanow, the proprietor of the store. The butter was taken to the back part of the store and weighed. Pederson did not enter the store at the time and he and his wife went to another part of the city for the purpose of trading with another merchant. During his absence Yanow had telephoned for one Rohde, a health officer of the city, and made complaint that Pederson had sold him adulterated butter. On Pederson's return Yanow accused him of selling adulterated butter and informed him that he was going to have him arrested on that charge. Pederson denied the charge, and after some conversation, Yanow, Rohde and Pederson went to the police station, Pederson supposing that he was under arrest. At the police station the matter was talked over, and the police judge told Pederson that he could go home, and return some other day. No complaint was filed against him nor was he at any time placed under arrest. Yanow and Pederson left the police station, and returned to the store, and on the way Yanow told him that for $25 he would drop the matter and settle with the police. Pederson gave him the $25 about the time of reaching the store. Yanow then went in, placed some butter in a box, putting a paper over it, and said to Pederson: "There is the butter. Take it now and get into the buggy." Without seeing the butter Pederson took the

box and placed it in his buggy. About this time Rohde, the health officer, returned to the store for the purpose evidently of securing a sample of the butter of which Yanow had made complaint. He went to the refrigerator where Yanow had first shown him the butter which he claimed Pederson had sold him, and found it empty. He then said to Yanow: "Where is the butter?" Yanow replied: "Never mind. It is all right. There is a five dollar bill in it for you." Rohde resented this offer and immediately went to Pederson's wagon, removed the cover from the box, and took out a sample of the butter. As soon as the cover was removed from the box Pederson and his wife, on seeing the butter, declared that it was not the butter that they had made and delivered to Yanow. The box of butter was then taken into the store and Yanow paid back the $25 which Pederson had paid him. This was not done, however, until Rohde manifested a disposition to fully investigate the case. About this time Klein entered the store, and apparently took great interest in the matter. He declared that the sample of butter which Rohde had taken away must be got back. He asked Pederson to go with him to see Rohde about it. On their way to find Rohde, Klein felt in his pockets, said he had no money, and asked Pederson to give him $10 with which to work Rohde. Klein had a talk with Rohde but accomplished nothing, and on their way back to the store he returned the $10 to Pederson. When they reached the store Klein said to Pederson: "Rohde knows what he is after. He knows there is $50 in this case for his pocket and you can not get out of it without you have to pay Rohde this $50. If you will leave the money with me I think I can work him a little cheaper, and I can save part of that money, and pay you back." Klein and Yanow then called Pederson into the back room of Klein's shop and Yanow said to Pederson, "Just hand him out $50. I know you've got it." Klein again told Pederson that he would try to work Rohde so as to get him out of it for less than $50; what he did not pay to Rohde he would give back to him, Ped-

erson. Pederson had only $40, and this he gave to Klein. Klein admits that he received the $40 from Pederson, but his defense is that it was paid him for services to be performed in preventing a criminal prosecution, and that, the money being paid for an illegal purpose, it can not be recovered back.

The law is well settled that one who has been a party to an illegal act will not be relieved from the legal effect of it. No court of law or equity will tend its assistance in any way towards carrying out an illegal contract. Therefore such contract can not be enforced by one party against another either directly, by asking the court to carry it into effect, or indirectly, by claiming damages or compensation for a breach of it. *Gould v. Kendall,* 15 Nebr., 549. That a party who is in *pari delicto* can not make his illegal act the basis of a recovery, has been definitely settled by this and many other courts. But where a strong mind takes advantage of a weaker, and by persuasion and influence procures the illegal act, this rule ceases to be applicable. The wrong then rests chiefly, if not solely, on the person by whom it was contrived, and his confederate is regarded as the mere instrument for accomplishing an end not his own. If a party should be allowed immunity under such circumstances he would be permitted to take advantage of his own wrong, and reap a benefit from his own fraud. *Davidson v. Carter,* 55 Ia., 117. In *Hess v. Culver,* 77 Mich., 598, it is said: "Where a man is defrauded, as often happens, by the misrepresentation of some one who assumes knowledge, and where, under the circumstances, he is actually deceived, and not consciously wrong, the fact that the transaction is against public policy in law will not necessarily compel the victim to submit to the fraud of the actual villian. The only rigid rule forbidding relief is where parties are in equal guilt. While the law does not draw fine distinctions in ascertaining equality of wrong, it recognizes the fact than one party to such an arrangement is not necessarily an equal party in guilt or consciously guilty at

all, and will not deny relief to an injured party against the one who is really the deceiver and who commits fraud by means of his persuasive or other influence over his victim." See, also *Duval v. Wellman,* 124 N. Y., 156; *Hinsdill v. White,* 34 Vt., 558.

The evidence in the record is amply sufficient to sustain the finding of the trial court. It is doubtful if the butter shown to Rohde as that sold by Pederson was not butter made by some other party. The testimony is amply sufficient to support the theory that Yanow and Klein entered into a conspiracy to extort money from Pederson by making a false charge that he had sold adulterated butter. Under the circumstances, they should not be allowed to profit at his expense, nor should he, who was not consciously violating any law, be denied relief against those who took advantage of his ignorance.

We recommend that the judgment of the district court be affirmed.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.