FRED DWORAK ET AL., APPELLEES, v. GEORGE DOBSON, APPELLANT.

FILED OCTOBER 18, 1918. No. 20020.

1. **Appeal:** MOTION TO MAKE DEFINITE: REVIEW. When a defendant moves the trial court to strike out or make more definite certain specified paragraphs of a petition in equity, and such motion is sustained in part and overruled in part, and the plaintiff with leave of court thereafter files an amended petition, and the defendant answers without renewing his motion, the ruling of the court on the motion to the original petition cannot be considered in this court upon appeal.

2. **Gaming:** SALE OF GRAIN. The delivery of grain to an elevator company, with the understanding that it shall be paid for when payment is demanded at the price then prevailing, is not made criminal by our antigambling statutes, and is not prohibited by our warehouse law.

3. **Principal and Agent:** UNDISCLOSED PRINCIPAL: LIABILITY. An undisclosed principal is liable for property which he obtains through the contracts of his agent, although such contracts were made by the agent in his own name. The fact that the owner of the property understood at the time that he was selling to the agent will not estop him to afterward collect the value of the property from the principal who in fact received and converted it.

4. **Appeal in Equity:** CONFLICTING EVIDENCE. Upon appeal in actions in equity, this court, in determining the issue, will not disregard the opinion of the trial court, upon conflicting evidence of witnesses examined in open court, in believing one version of the facts rather than the opposite.

APPEAL from the district court for Butler county: GEORGE F. CORCORAN and EDWARD E. GOOD, JUDGES. Affirmed.

*Matt Miller* and *T. J. Doyle,* for appellant.

*Norval Bros., J. J. Thomas, Hastings & Coufal, A. W. Richardson* and *A. M. Bunting, contra.*

SEDGWICK, J.

The plaintiffs began this action in the district court for Butler county to recover the value of grain which

they alleged they had delivered to the Ulysses Grain Company at Ulysses, Nebraska. George Dobson, John Dobson, Jesse A. Smith, First Bank of Ulysses, Ulysses Grain Company, and Central Nebraska National Bank of David City were made defendants. Judgments were entered against the defendant George Dobson and some others of the defendants, and George Dobson alone has appealed to this court.

The petition alleged that the defendant George Dobson was, at the times mentioned in the petition, the owner of the Ulysses Grain Company, and that he with the other defendants entered into a conspiracy to defraud these plaintiffs of their grain. On account of the large number of plaintiffs and the diversity of their claims, and perhaps for other reasons, the action was in equity, and the petition alleged that some of the grain of the plaintiffs had been converted into money, and the money was on deposit in the respective banks, and that the defendant George Dobson was attempting by legal proceedings and otherwise to get possession of that money. A restraining order was asked for enjoining such proceedings. The petition also asked that a receiver be appointed to take possession of the money in the Central Nebraska National Bank, and that the money be distributed to the plaintiffs in accordance with their interests therein. They asked for judgment against George Dobson, the First Bank of Ulysses, and also against William T. Spelts, who does not appear to be named as defendant in the "second amended petition," upon which it appears that the action was tried. The petition also contained the usual prayer for "such other and further relief as is just and equitable." A temporary injunction was allowed impounding the funds in the banks, and there was a general finding that the allegations of the plaintiffs' amended petition, as against the defendants George Dobson, William T. Spelts, and Jesse A. Smith, were true, and for the

plaintiffs on the issues joined as against said defendants, and in favor of the First Bank of Ulysses and John Dobson. The court also found that the plaintiffs had each respectively delivered grain to the Ulysses Grain Company as alleged, finding the dates and amounts of such delivery by each of the plaintiffs, respectively, and the value of the grain so delivered. The court also found the amount of money in the banks, and the amount that should be paid to each of the plaintiffs, respectively, and entered a judgment against the defendant George Dobson for the balance of the value of the plaintiffs' grain so delivered.

The controversy was between these plaintiffs and the defendant George Dobson. No answer was filed by the other defendants, and no part taken by them in the trial of the case except as witnesses. The defendant George Dobson filed a general demurrer to the petition, which was overruled. He also filed a motion to make more definite and certain, which was confessed in part by the plaintiffs and overruled in part by the court. Afterwards the plaintiffs filed an amended petition. We do not find that any motion was made to this amended petition, and the rulings of the court and proceedings upon the original petition are therefore not now before this court. The defendant George Dobson filed a general denial. Upon the trial he denied that he had any interest in the funds in the banks, and is therefore not in a position to urge the objection now that the parties interested in that fund were not all brought before the court.

The second amended petition alleged that the defendant George Dobson bought the elevator and established the business of the Ulysses Grain Company in 1908, and from that time until the 19th day of December, 1915, the said business was "owned and so operated by the said George Dobson in the trade name 'Ulysses Grain Company,'" and that while he so owned

and operated said business and on the dates specified the plaintiffs delivered grain in the amounts specified to the said Ulysses Grain Company pursuant to a plan which was adopted by the said George Dobson and others to procure the said grain for their own use. It was therefore immaterial in determining liability for the value of the grain whether they sold the grain or delivered it for bailment.

The evidence tends to show that the understanding was that the grain so delivered should be paid for at any time the plaintiffs demanded at the price then prevailing. If we regard that as established, it amounts to completion of the sale at the time the price was fixed under the arrangement, and is not made criminal by any of our antigambling acts that have been brought to our attention, and is not prohibited by our warehouse law.

The main question tried by the court was whether the defendant George Dobson was in fact the owner of the business, and, as such, received the grain of the plaintiffs. It was claimed by him that he had leased the elevator to the defendant Smith, and that Smith alone, and not Dobson, was liable to the plaintiffs. The defendant Smith was the manager of the business and for several years had been in the employ of Dobson as such. It is insisted that the checks given by Smith for some of the grain recited on their face that Smith was the proprietor of the business. The contention of the plaintiffs is that at one time Smith attempted to assist Dobson in representing that Smith was the proprietor, and the question of Dobson's liability depends upon the ultimate fact whether he was the owner of the business and so received the grain at the time that it was delivered there. The manner of conducting the business and circumstances surrounding it might be evidence upon this point, but would not necessarily be conclusive, and the fact that the plaintiffs, if it was a fact, were

misled to suppose that Smith was the owner of the business would not estop them to afterwards allege and rely upon the liability of the real owner.

The difficult question in this case is as to the ownership of the business when this grain was delivered by these plaintiffs to the Ulysses Grain Company. In determining this question there are many circumstances to be considered. There was an immense amount of documentary evidence offered, some indicating that Smith was the owner of the business, and some that the defendant Dobson was the owner. The two judges of the district court sitting together were occupied several weeks in the trial of the case. The principal difficulty is in reconciling the evidence of the witnesses which upon its face is apparently irreconcilable. The defendant Dobson testified to a state of facts that indicate strongly that he leased the elevator to Smith in the spring before any of this grain was delivered there, and that the business was then by him entirely turned over to Smith. In this he has some support from the defendant Spelts, and perhaps other witnesses, who were more or less interested with him in various business transactions. The defendant Smith, who was the manager of this business from the time of its purchase by Mr. Dobson, and during the whole course of the business, testified that in the spring Dobson told him that he (Dobson) thought of quitting the business himself and leasing the elevator to some other parties, and that he (Smith) suggested that Dobson lease the elevator to him; that the rental value of the elevator was suggested by Dobson to be $125 a month, and that Smith contended that it should not be more than $100 a month, and that Dobson said he would consider the matter, and that nothing more was done in regard to it until the liability for this grain was incurred, and that then Dobson desired to make it appear that he had leased the elevator and turned over the business to Smith in

the spring. This evidence was denied by Dobson, and some circumstances were testified to by defendant Spelts which seem inconsistent with Smith's evidence. Also, it appears that Smith had attempted to make it appear that he was the owner of the business, and had been from early in the spring. Smith's own testimony in another earlier suit was inconsistent with the evidence which he now gives in this case. It is contended, and there is some evidence for the contention, that early in the summer it was discovered by Dobson and some who were interested with him in business matters that the grain business in which he was interested had suffered severe losses and incurred liabilities that would soon be pressing, and that the plan to avoid these liabilities, so far as Dobson was concerned, was by making it appear that Smith alone was liable, or causing Smith to procure grain from farmers that might be converted into money with which to liquidate such liabilities as might be fastened upon Dobson. Smith testified that such an arrangement was made, and admitted that he had been attempting to assist Dobson in carrying out this plan. Smith, it appears, was insolvent, and not financially responsible, and he having been in the employment and under the direction of Dobson for so many years, it is not inconceivable that he might have been induced to assist Dobson in such an undertaking and so continue his own employment.

These witnesses testified in open court, and were submitted to cross-examination, and the most delicate and difficult duty devolved upon these two judges was, by observing all of the circumstances in the case, and particularly the testimony of these witnesses and their demeanor and manner of testifying, their frankness or reserve, as the case might be, to satisfy themselves as to which version of the facts was more deserving of confidence and so determine the fact as to the owner-

ship of this business when the grain was delivered. These two trial judges appear to have given great, and perhaps unusual, care to the investigation of this important question, and, while we are to try this case *de novo* and without reference to the findings of the trial court, their opportunities of estimating the probative force of the somewhat conflicting evidence of these witnesses, who were examined in their presence, and the fact that they under those conditions believed the witness Smith and those who agreed with him in their testimony, must be regarded by this court as an important consideration. After considering all the conditions that have been brought to our attention, we cannot come to a different conclusion.

The judgment of the district court is therefore

                                                      AFFIRMED.