Bankers Surety Co. v. Willow Springs Beverage Co.

---

BANKERS SURETY COMPANY, APPELLANT, v. WILLOW SPRINGS BEVERAGE COMPANY, APPELLEE.

FILED JANUARY 31, 1920.   No. 20843.

1. **Intoxicating Liquors: LICENSE: PUBLIC POLICY.** Under our law, and even prior to the passage of the 1907 statute (Rev. St. 1913, sec. 3888), it being unlawful to issue a license for the sale of intoxicating liquors at retail to any person other than the real party in interest, as such a license was 'considered a personal trust to the licensee, a contract between the licensee and a third person, making such third person an undisclosed principal for the operation of the business, is against public policy.

2. **Principal and Agent: UNDISCLOSED PRINCIPAL: LIABILITY.** An undisclosed principal is bound by simple contracts made by his agent when the acts done by the agent are within the scope of his authority and in the course of his employment.

3. ———: ———: Bonds. Where one acts as an undisclosed principal of a saloon-keeper and thus unlawfully controls and operates a saloon in the name of such saloon-keeper, as licensee, and a third person furnishes to the saloon-keeper a liquor license bond, necessary to the carrying on of such business, such third party, when he learns the facts, is not denied the right of holding the undisclosed principal on the bond contract, though the arrangement between the undisclosed principal and his agent is against public policy, when the party furnishing the bond did not know of, and did not purposely nor wittingly intend to aid, nor further, such unlawful arrangement, and was not, therefore, in *pari delicto* with the other parties.

4. Limitation of Actions: Indemnity Bond. It is the rule in the case of indemnity contracts that a cause of action to recover indemnity does not accrue until a loss occurs, and, it follows, the statute of limitations does not commence to run until that time.

5. ———: Fraud. If a person against whom a cause of action exists, by fraud or concealment, prevents the person having such cause of action from obtaining knowledge thereof, the statute of limitations will not commence to run until the cause of action is, or by due diligence should have been, discovered.

Appeal from the district court for Douglas county: Charles Leslie, Judge. *Reversed.*

*Brogan, Ellick & Raymond,* for appellant.

*I. J. Dunn, contra.*

Flansburg, C.

This was an action against defendant, Willow Springs Beverage Company, as undisclosed principal of a saloon-keeper in Nebraska City, upon a contract made by the saloon-keeper, in favor of the plaintiff, Bankers Surety Company.

A demurrer to the petition was sustained and the action dismissed, from which ruling the plaintiff appeals.

The petition sets out that in 1907 one Prenica, a licensed saloon-keeper in Nebraska City, made application to the plaintiff, Bankers Surety Company, for a liquor license bond; that this was furnished him by the plaintiff company, and by the terms of this bond plaintiff agreed to pay all damages, fines, and penalties adjudged against Prenica growing out of the operation of the saloon and

the sale of intoxicating liquors. As a condition to the issuance of said bond, however, the petition shows that Prenica made written agreement to indemnify the plaintiff company against all loss or expense incurred by it under said bond, and represented in his application that the stock and fixtures owned by him were of the value of $4,200. The petition further alleges that the defendant, during the year 1907, was a corporation engaged in the manufacture of intoxicating liquors, and that this defendant was the owner of said saloon and operated it secretly through Prenica as its agent and employee, and that Prenica had no other interest than that of an employee; that plaintiff was not informed of these facts of ownership and control of the saloon until June 15, 1916, and in its dealing relied upon Prenica being the sole owner and proprietor; that plaintiff has been compelled to pay $2,740 under the bond furnished, has not been reimbursed, and seeks judgment against defendant as an undisclosed principal upon the contract given by Prenica in his name as licensee, agreeing to indemnify the plaintiff company.

The defendant contends that the petition does not state a cause of action, since the relationship of principal and agent alleged to exist between Prenica and the defendant is, on its face, against public policy and void, and that to allow the plaintiff to recover gives recognition to, and enforces, this illegal contract of agency.

1. Our statute (Rev. St. 1913, sec. 3888) making it unlawful for liquor manufacturers to become interested directly or indirectly in any license for the sale of intoxicating liquors at retail, and fixing a penalty for violation did not become the law until after the contract in question was executed, but it would seem this makes no material difference in the case. Under our law, as it existed prior to the passage of this statute, it was unlawful to issue a license to any person other than the real party in interest, for the reason that a license was a personal trust to the licensee named in it, and that it

was to the public interest that such licensee should have and maintain exclusive control of, and be personally responsible for, the manner of operation of the saloon. A contract, therefore, interfering with that control and placing the control in fact in some other than the licensee named, would be against public policy, and, so far as the questions to be determined in this case are concerned, we may assume that such contract of principal and agent would be utterly unenforceable and void as between the saloon-keeper and the undisclosed principal.

2. What effect, then, did the illegality of such contract have upon the right of plaintiff in this case?

Were it not for the illegality mentioned, it is well settled plaintiff could recover against the defendant under the facts stated in the petition. An undisclosed principal is bound by simple contracts made by its agent when the acts done by the agent are within the scope of his authority and in the course of his employment. Under the allegations of plaintiff's petition, it appears that Prenica was so acting, and that the bond procured was for defendant's benefit and as a necessary incident to the carrying on of defendant's business. Such rule of law, except in the case of certain contracts as those concerning real estate or specialties, is firmly established. *Dworak v. Dobson,* 102 Neb. 696; *Lamb v. Thompson,* 31 Neb. 448; *City Trust, Safe Deposit & Surety Co. v. American Brewing Co.,* 75 N. Y. Supp. 140, 84 N. Y. Supp. 771.

3. It must be conceded, however, that plaintiff can recover, if at all, only by reason of the illegal contract between Prenica and the defendant.

Plaintiff was not a party to this illegal contract. It did not wittingly furnish a bond for the purpose of aiding in the unlawful arrangement. When it loaned its credit in the form of this bond, it was acting in reliance upon Prenica and his apparent ownership of the business engaged in.

Is the contention tenable that the defendant should be allowed to further its own interests and reap a benefit

from such an unlawful arrangement, and, at the same time, not be compelled to pay for goods or credit innocently furnished to it by parties who relied upon the fact that such an unlawful arrangement did not exist? That is the contention of the defendant.

The plaintiff and defendant are not in *pari delicto*. In fact the petition shows that the plaintiff is entirely free from any wrongful or unlawful purpose. We are of opinion that it is in the interest of public policy that the innocent party in such a transaction should be granted protection and saved from the loss of that right which would unquestionably exist were no wrongful act on the part of the other involved. 13 C. J. 498; *Darling v. Kipp,* 93 Neb. 781; *Griffin v. Chriswisser,* 84 Neb. 196; *Klein v. Pederson,* 65 Neb. 452; *Bateman v. Robinson,* 12 Neb. 508; *Grey v. Callan,* 133 Ia. 500.

Our court has gone further in granting relief than is required in this case. In *Kittle v. DeLamater,* 4 Neb. 426, the defendant had employed a printer to make maps containing a lottery scheme, when such lottery was prohibited by statute. The court held that, though the printer had knowledge of the purpose for which the maps were specially made and printed them for the purpose intended, yet, as he took no part in their publication and distribution, recovery could be had upon a note given by defendant for these services, since the printer was not in *pari delicto* with the defendant.

It is the general rule that, where a person sells or furnishes articles to another and knows they are to be used for an illegal purpose, such knowledge alone does not make him *particeps criminis* with the party who intends to so use them, unless the goods are of such a nature as to have a direct connection with the unlawful business in such a way as to show an unlawful intent common to both parties. 13 C. J. 518.

We are, therefore, of opinion that, from the allegations of the petition, it appears that the contract here sued

upon was binding upon the defendant according to its terms.

4. It is further argued that, if there was a cause of action against defendant upon the contract, it is now barred by the statute of limitations. Suit was commenced September 26, 1917. The petition sets out a list of individual items of expenditures to which the plaintiff had been subjected by reason of its obligation on the bond. These expenditures began with an item in December, 1909, and occurred at intervals until the last expenditure on April 29, 1915; some expenditures were made more and some less than five years prior to the commencement of this suit.

It is the rule on indemnity contracts that the cause of action to recover indemnity does not accrue until the loss occurs, and it follows that the statute of limitations in this case would not, in any event, commence to run as to any of the individual expenditures until the date when the expenditure was made. *Northern Assurance Co. v. Borgelt*, 67 Neb. 282.

5. But it seems to us that in this case the cause of action on the several expenditures would not begin to run against this defendant until June 15, 1916, when the plaintiff ascertained that the contract was in fact the contract of this defendant. By the allegations of the plaintiff's petition it is made to appear that Prenica was placed in possession of the property, allowed to represent that the stock and fixtures were of the value of $4,200, were free from incumbrance and were his property, and to hold out that he was the proprietor entitled to the earnings of the business. The defendant was responsible for these representations, and they were false. In fact the defendant was, in violation of law and contrary to the representations made by Prenica, standing over Prenica as an undisclosed principal, and was in fact receiving the benefits of the bond furnished by the plaintiff, and in fact owned the property and was entitled to all the earnings and profits of the business. We take it

that this was more than mere silence on the part of the defendant, but was an affirmative device on its part to conceal the facts and to prevent its being known that it was the proprietor of the business and subject to the obligations accruing from the operation of such business. Such concealment of fact prevented the plaintiff from knowing the identity of the party to whom it was actually furnishing credit, and the plaintiff was thus prevented from discovering that it had a cause of action against this defendant. Under such circumstances, it not appearing that the facts might have been sooner discovered by the plaintiff, the statute of limitations would begin to run from the time in 1916 when plaintiff first learned of its cause of action. 25 Cyc. 1214.

For the reasons given, we believe the petition states a cause of action, and that the demurrer should have been overruled. We therefore recommend that the cause be reversed and remanded for further proceedings.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings, and this opinion is adopted by and made the opinion of the court.

REVERSED.