LINCOLN JOINT STOCK LAND BANK, APPELLANT, V. JOHN H. BEXTEN ET AL., APPELLEES.

FILED SEPTEMBER 29, 1933. No. 28562.

*Good, Good & Kirkpatrick, Brogan, Ellick & Van Dusen* and *James J. Fitzgerald, Jr.*, for appellant.

*Finlayson, Burke & McKie, contra.*

Heard before Goss, C. J., Dean, Good, Eberly, Day and Paine, JJ., and Messmore, District Judge.

Eberly, J.

This is an appeal by the Lincoln Joint Stock Land Bank of Lincoln, Nebraska, from the order of the district court for Douglas county sustaining the separate general demurrers of defendants Mary A. Bexten and the First National Bank of Omaha, Nebraska, to its petition, fol-

lowed by a judgment of dismissal as to these defendants on the election of the "Land Bank" to stand on its petition as amended.

This is a suit at law by plaintiff upon a written contract which, by its terms, purports to have been executed by plaintiff, as party of the first part, and by John H. Bexten and Mary A. Bexten, as parties of the second part, and to modify the terms and conditions of a certain note and mortgage covering Iowa real estate therein described, and the payment of which as therein modified is assumed by the parties of the second part. The amount of the recovery sought is $10,916.47 with interest at 8 per cent. per annum from and after November 28, 1931, being the amount of the deficiency remaining unsatisfied after the foreclosure of this mortgage in a proceeding in equity in the district court for Monona county, Iowa, the sale of the premises embraced in said mortgage by order of the Iowa court, and the application of the proceeds thereof in satisfaction of the indebtedness then and there by that court adjudged to be due and unpaid.

The following constitute a summary of the facts of the transaction alleged in the petition demurred to:

On June 11, 1919, one Lacey and wife executed, as owners of the fee, a real estate mortgage on section 14, township 84, range 43, in Monona county, Iowa, to plaintiff to secure the repayment of a loan of $35,000 contemporaneously made to the mortgagors. This mortgage was a first lien on the premises described. The indebtedness secured bore interest at 6 per cent. per annum, and, with interest as it accrued, was payable in semiannual instalments of $1,225 each on the first day of October and the first day of April of each year. On the 7th day of April, 1923, the mortgaged lands were conveyed by the then owners to John H. Bexten. On September 10, 1926, a new contract in writing, already referred to, was entered into by and between the Lincoln Joint Stock Land Bank and John H. Bexten and wife, Mary A. Bexten, which, by its terms, reduced the rate of interest from 6

per cent. to 5¼ per cent. payable semiannually, resulting in the reduction of the semiannual payments to be made thereafter to $960.93. This written agreement also stipulated for an acceleration of the maturity of unpaid instalments in the event of default in the payment of any one of the instalments; that after five years from the date of the agreement the "mortgagor" had the option of paying in advance upon any regular instalment date any number of payments on account of the principal of this loan, etc.; also, "Party of the second part agrees to make said payments as herein provided and the said original note and mortgage shall continue in full force and effect as originally made except as extended and modified by this agreement." All instalments were paid as they became due until April 1, 1931, when default was made. Plaintiff commenced its action in foreclosure in the district court for Monona county, Iowa, on May 4, 1931, upon the mortgage executed by Lacey and wife and as modified by the written agreement of September 10, 1926, executed by John H. Bexten and Mary A. Bexten, his wife. Bexten and wife and the First National Bank of Omaha were parties defendant in said action. Bexten and the First National Bank were served with process in the state of Nebraska only, as nonresidents of the state of Iowa, and neither made a personal appearance in said action; but process was duly served on Mary A. Bexten in Iowa. On October 5, 1931, a decree of foreclosure and sale was entered in this proceeding. It determined the amount due, directed that the mortgaged lands be sold on special execution to satisfy the same, and directed that judgment be rendered in favor of the plaintiff and against the defendants (who had been personally and properly served within the state of Iowa) for any deficiency that remained after such sale, and the application of the proceeds of the sale to the satisfaction of the amount adjudged due, with costs. Sale was duly made on special execution as directed, and the proceeds thereof applied on the judgment entered, leaving a bal-

ance unsatisfied amounting to $10,916.47. The laws of Iowa governing the foreclosure of real estate mortgages are pleaded by plaintiff, but it is alleged that a personal judgment as authorized by the decree pleaded was in fact entered against Mary A. Bexten, and is and remains in full force and effect, but it is not alleged that a general execution has been issued on the decree of foreclosure against the defendants or any of them. It is expressly alleged "that, as this plaintiff is informed and verily believes, said title so conveyed (on April 7, 1923) was in fact taken by the said John H. Bexten as agent for and for the use and benefit of the defendant First National Bank of Omaha, Nebraska, and that all of the acts and doings of the said defendant Bexten from and after said date, in connection with the said land and the mortgage indebtedness thereon owing to this plaintiff (including the agreement in writing of September 10, 1926) were done and performed by the said John H. Bexten as agent for and for the use and benefit of and with the intention to bind the said defendant First National Bank of Omaha, Nebraska." It is also alleged as a matter of ratification that all payments of instalments of indebtedness after September 10, 1926, were made by the First National Bank out of its own funds, and that it has received and enjoyed all rents and profits arising out of the mortgaged premises. The plaintiff, by leave of court obtained, amended the foregoing petition by adding thereto the following: "That prior to acquiring the title to the said real estate in the name of the defendant Bexten, the defendant the First National Bank had acquired a junior mortgage upon the said real estate, which mortgage had been transferred to the said bank to secure it upon a preexisting indebtedness upon a loan made to one of its customers, and its act in acquiring the title to the said real estate to be taken for its use and benefit in the name of the defendant John H. Bexten was intended to secure the payment or further security of its said loan." To this petition demurrers, on the sole ground that the peti-

tion does not state facts sufficient to constitute a cause of action against the appellees severally, were sustained by the trial court.

In consideration of the case before us, it is to be kept in mind that the amendment to the petition, made on April 8, 1932, in so far as the facts therein are alleged, is controlling, and is not to be limited by the conclusions of law and facts set forth in the original petition inconsistent therewith. This amendment charges that the defendant bank, prior to the transfer by "mesne conveyances" of the title to the lands described in the petition to John H. Bexten, had made a loan to a customer not named in the pleadings; that subsequent to the making of this loan this customer transferred to the bank a junior mortgage on the premises here in suit to secure such bank on his preexisting indebtedness; that thereafter on April 7, 1923, the vesting of the legal title by use of "mesne conveyances" in John H. Bexten was carried out "to secure the payment or further security of" its said loan to the unnamed customer referred to in the amendment. At the time of these conveyances to Bexten, it is necessarily to be inferred from allegations quoted that the relation of debtor and creditor between this unnamed customer and the bank was wholly unaffected by the transaction and its continued existence unmodified is to be presumed until the contrary is expressly shown. "A fact, relation, or state of things once shown to exist is presumed to continue until the contrary appears." 9 Ency. of Evidence, 906. See, also, *Bell v. Young*, 1 Grant's Cas. (Pa.) 175.

The rule of law applicable to this situation thus presented is: "The holder of a negotiable promissory note, secured by mortgage, as collateral security for a debt, is entitled, upon default, to proceed with the foreclosure of the property included in the mortgage security, and to entry, and possession thereof, under appropriate proceedings. Such proceedings, however, do not change the relations of the parties to the contract of pledge, the land

being simply substituted as collateral security in place of the notes and mortgage, and remaining subject to redemption. Nor, as between the pledgor and pledgee, is such foreclosure, entry and possession a payment of the debt for which the notes and mortgages are held as collateral security." Colebrooke, Collateral Securities, 235, sec. 183.

True, in the instant case, certain voluntary conveyances are substituted for legal proceedings, but the result attained is essentially the same, and the mutual relation of the parties as debtor and creditor remains identical. *Tower v. Fetz,* 26 Neb. 706; *Riley v. Starr,* 48 Neb. 243; *Samuelson v. Mickey,* 73 Neb. 852.

As to the defendant First National Bank of Omaha, plaintiff's amended petition must be deemed an attempt to state a cause of action within the rule that an undisclosed principal is bound by an executory simple contract made by the agent within the scope of his authority and in the course of his employment, although the contract purports to be the individual contract of the agent.

Plaintiff's amended petition is silent as to the date when the information as to the relation of principal and agent between the bank and Bexten first came into its possession. It is not charged that any faith or credit was in fact extended to Bexten in the transaction involved in this litigation because of his relation to the First National Bank of Omaha now claimed to exist. It is solely because of the alleged existence of that relation on the date of the institution of the action that a recovery is claimed.

In this connection it is also to be kept in mind, as applicable alike to an undisclosed agency and to one whose creation and extent are known to the interested parties, that "one who acts through an agent in law does the act himself, *qui facit per alium facit per se,*" and thus "it follows that capacity to act by agent depends in general on capacity in the principal to do the act himself if he were present. * * * That incapacity to appoint an agent

is a necessary consequence of personal disability to do the act for which the agent is employed." 2 C. J. 429, 430.

The first important question for consideration is the capacity of the defendant First National Bank to enter into the contract alleged to have been made by Bexten in its behalf as its undisclosed agent.

National banks are creatures of public statutes which are necessarily the source of their powers. Therefore, no powers may be rightfully exercised by them save such as are expressly granted or which are incidental to carrying on the business for which they are established. *Logan County Bank v. Townsend,* 139 U. S. 67; *California Bank v. Kennedy,* 167 U. S. 362; *First Nat. Bank v. Converse,* 200 U. S. 425; *Clement Nat. Bank v. Vermont,* 231 U. S. 120; *First Nat. Bank v. Missouri,* 263 U. S. 640.

The scope or extent of the lawful powers possessed by or vested in a national bank is to be determined by a proper construction of the federal statutes relating thereto. On this subject the decisions of the supreme court of the United States are conclusive. *California Bank v. Kennedy,* 167 U. S. 362; *Central Transportation Co. v. Pullman's Palace Car Co.,* 139 U. S. 24.

The following provisions of the federal statutes cover the subject of powers conferred on national banks, so far as pertinent to the instant controversy:

"A national banking association * * * shall have power * * * Third. To make contracts. * * * Sixth. To prescribe, by its board of directors, by-laws not inconsistent with law, regulating the manner in which its stock shall be transferred, its directors elected or appointed, its officers appointed, its property transferred, its general business conducted, and the privileges granted to it by law exercised and enjoyed. Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by

buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this chapter." 1 Mason's U. S. Code, 596.

As to real estate, it is provided:

"A national banking association may purchase; hold, and convey real estate for the following purposes, and, excepting as provided otherwise in section 371 of this title, for no others: First. Such as shall be necessary for its immediate accommodation in the transaction of its business. Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted. Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. Fourth. Such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts due to it. But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years." 1 Mason's U. S. Code, 598.

It is obvious that the First National Bank of Omaha was within the express words of the statute in accepting and acquiring, as alleged in the amendment to the original petition, the junior mortgage to further secure it upon a preexisting indebtedness evidenced by the loan made to its customer. And, as we have already seen, its rights thus secured were substantially unchanged as the result of the "mesne conveyances" which were thereafter made. Had the bank been named as grantee instead of Bexten in the conveyances referred to, and entered into possession thereunder, it would have been within the proper designation of a "mortgagee in possession;" that is, one who has lawfully acquired actual possession of the premises mortgaged, standing on his rights as mortgagee. 41 C. J. 612.

"Where a national bank has lawfully acquired an interest in real property, in satisfaction of a debt, it may

purchase other undivided interests therein or incum-
brances existing thereon, provided such action is neces-
sary to enable it to manage or dispose of the property
to better advantage." 7 Michie, Banks and Banking, 207.
See, also, *Williams v. Merchants Nat. Bank,* 42 Fed. (2d)
243; *Cockrill v. Abeles,* 86 Fed. 505.

A national bank which lawfully holds a second mort-
gage on property may buy in the first mortgage to protect
its interest. *Holmes v. Boyd,* 90 Ind. 332; *Heath v. Sec-
ond Nat. Bank,* 70 Ind. 106.

So, also, "A national bank has power to covenant to
pay on demand a lien on land acquired by it." *Mutual
Life Ins. Co. v. Yates County Nat. Bank,* 54 N. Y. Supp.
743. See, also, *New England Loan & Trust Co. v. Rob-
inson,* 56 Neb. 50.

It is clear that the transaction challenged is not *ultra
vires* but within the statutory powers of national banks.

Nor do we deem that the rights of the parties to this
litigation, in view of the admissions in the demurrers, are
in any manner modified or impaired by the fact that the
defendant bank chose to act in the transaction through
and by the individual name of the agent, John H. Bexten,
then its cashier, instead of employing its corporate name.
On this point the decision of the supreme court of the
United States in *Schuyler Nat. Bank v. Gadsden,* 191 U.
S. 451, 458, is pertinent. The question for decision be-
fore that court in the case cited was whether it was
competent for a national bank to take a real estate
mortgage in the individual name of its president to secure
an indebtedness owing to it, so as to endow the obligation
so acquired with all the incidents of a like instrument
executed to it in its own corporate name. In announcing
the affirmative of the proposition, Justice White, in the
majority opinion employed the following language:

"It is not contended that under the laws of Nebraska
an agent, acting in his own name, may not take security
for the benefit of a principal, or that there is or could
be any valid statute of the state of Nebraska discrim-

inating against national banks, and depriving them of the benefits of transactions so consummated. This being true, it follows that the taking of real estate security by the president of the bank in his individual name, for the benefit of the bank, was in legal effect but the taking of security by the bank itself."

We have in Nebraska no statutes depriving national banks of the benefits, or shielding them from the liabilities, of contracts entered into in their behalf in the individual names of their representatives.

The agreement in suit is not a negotiable instrument; neither is it an obligation "under seal." In this jurisdiction we have long been committed to the rule that "an undisclosed principal is bound by simple contracts made by his agent when the acts done by the agent are within the scope of his authority and in the course of his employment." *Bankers Surety Co. v. Willow Springs Beverage Co.*, 104 Neb. 173. See, also, 2 C. J. 840; 21 R. C. L. 890, 891, secs. 63, 64; *Webster v. Wray,* 17 Neb. 579; *Webster v. Wray,* 19 Neb. 558; *Lamb v. Thompson,* 31 Neb. 448; *Dockarty v. Tillotson,* 64 Neb. 432; *Dworak v. Dobson,* 102 Neb. 696; *Eustis Mfg. Co. v. Saco Brick Co.,* 198 Mass. 212; *Wm. Lindeke Land Co. v. Levy,* 76 Minn. 364; *Ford v. Williams,* 21 How. (U. S.) 287; *Timmerman v. Bultman,* 243 Mich. 344; *Greenburg v. Palmieri,* 71 N. J. Law, 83; *Collentine v. Johnson,* 203 Ia. 109; *Maynard v. Fabyan,* 267 Mass. 312; *Dornfeld v. Thompson,* 177 Wis. 4; *Dexter Horton Nat. Bank v. Seattle Homeseekers Co.,* 82 Wash. 480; *Gay v. Kelley,* 109 Minn. 101; *Hutchison Lumber Co. v. Lewis,* 89 Okla. 145; *Rowell v. Oleson,* 32 Minn. 288; *Nissen v. Sabin,* 202 Ia. 1362; *Moore v. Consolidated Products Co.,* 10 Fed. (2d) 319; *Byington v. Simpson,* 134 Mass. 169; *Downer v. Goodwin,* 15 Fed. (2d) 807.

This rule is applicable to the banking business, as we have seen, and as to the First National Bank is controlling in the instant case.

The principle here announced is not in conflict with

the conclusion of this court in *Farrell v. Reed,* 46 Neb. 258; *Reeves v. Wilcox,* 35 Neb. 779; *Thornton v. Farmers & Merchants Nat. Bank,* 117 Neb. 355, and like cases. The subjects under consideration in those cases were negotiable instruments which constitute a well-recognized exception to the rule here declared as to the liability of undisclosed principals.

It seems also that under the facts admitted by demurrers the statute of frauds affords no defense. The applicable rule is:

"Generally, one dealing with an agent of an undisclosed principal may, after disclosure, sue either the principal or the agent, or may join them both. * * * The fact that the contract is required by the statute of frauds to be in writing does not affect the general rule." 21 Standard Ency. of Procedure, 549. See, also, *Ford v. Williams,* 21 How. (U. S.) 287; *Exchange Bank v. Hubbard,* 62 Fed. 112; *Fitzgerald v. Morrissey,* 14 Neb. 198; *Clay v. Tyson,* 19 Neb. 530; *Rogers v. Empkie Hardware Co.,* 24 Neb. 653; *Peyson v. Conniff,* 32 Neb. 269; *Swayne v. Hill,* 59 Neb. 652; *Stanton Nat. Bank v. Swallow,* 113 Neb. 336.

It necessarily follows that the petition demurred to stated a cause of action against the First National Bank of Omaha.

By parity of reasoning, and in view of the personal judgment in favor of the plaintiff and against the defendant Mary A. Bexten, pleaded in the petition demurred to, we arrive at the conclusion that a cause of action was stated against that defendant also.

It follows that the district court erred in its order sustaining each of the demurrers, and in its judgment of dismissal entered herein.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.